COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




MARIA CASTILLO,


 Appellant,


v.



BRIAN AUGUST, M.D.,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-06-00048-CV



Appeal from the


County Court at Law Number Three


of El Paso County, Texas 


(TC# 2005-8650) 



O P I N I O N


 Maria Castillo appeals the trial court's dismissal of her medical negligence claim. The
sole issue is whether the trial court abused its discretion when it dismissed with prejudice her
claims against Dr. August based on her failure to provide an adequate expert report as required
by Sections 13.01 and 14.01 of the Medical Liability and Insurance Improvement Act (MLIIA). 
Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex.Gen.Laws 2039 (former
Tex.Rev.Civ.Stat.Ann. art. 4590i), repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204,
§ 10.09, 2003 Tex.Gen.Laws 847, 884. (1) We affirm.

 On July 22, 2002, Ms. Castillo underwent a spinal surgery to install surgical hardware in
her spine. The surgery was performed at Providence Medical Hospital by Dr. Paul H. Cho. (2) A
week after the surgery, on July 29, 2002, Ms. Castillo was transferred to Del Sol Rehabilitation
Hospital ("DSRH") under the care of Dr. August. Dr. August states that he is a specialist in the
field of Physiatry, the practice of physical medicine and rehabilitation. 

 Upon being admitted to DSRH, an initial assessment of Ms. Castillo's condition was
conducted by Registered Nurse Willie Sanchez. Nurse Sanchez' notes indicate that the incision
site had been measured and photographed, that signs and symptoms of infection were present,
and that the incision appeared clean, dry, and intact with ecchymosis (3) noted.

 Dr. August's entries in Ms. Castillo's medical records suggest that he examined her on
July 30, 2002, at which time he wrote that her history and physical would be dictated at some
future date. He dictated these notes on October 14, 2002, indicating that the incision was clean
and dry at the time of her July 30 exam. On July 31, 2002, Dr. August made another entry
stating that the incision looked good. In a subsequent note made on August 2, 2002, Dr. August
states that Ms. Castillo is stable.

 On July 30, 2002, Ms. Castillo's blood work showed signs of infection, and on July 31,
she became feverish. Several nurses noted in her chart that she was experiencing nausea and
vomiting after meals, and was crying and complaining of back spasms. There is also a chart
entry indicating that her mother raised some concerns regarding whether Dr. August was visiting
Ms. Castillo at all.

 On or about August 2, 2002, unhappy with her care at DSRH, Ms. Castillo requested to
be transferred to Rio Vista Rehabilitation Hospital ("Rio Vista"). The following day, she
continued to complain of nausea and fell in the bathroom while trying to dress. She was kept out
of physical therapy because she was dizzy and nauseous and complained of having headaches. 
She was lethargic, weak, and feverish.

 On August 3, Ms. Castillo was still feverish, drowsy, and disoriented. She became
unable to sit up in bed. Blood cultures performed on this day showed signs of infection and she
was placed first on IV antibiotics and later on oral antibiotics. The blood cultures were ordered
by the on-call physician, Dr. Kevin Sandberg, however it is unclear from the report whether
Dr. Sandberg or Dr. August ordered the antibiotics. Entries in her medical record from August 4,
2002, indicate that Ms. Castillo remained lethargic, was difficult to arouse, and continued to
experience pain in her back and ran a fever. A urine culture indicated that Ms. Castillo was
suffering from Klebsiella Pneumonia.

 On August 5, 2002, Ms. Castillo was transferred to Rio Vista, where she remained under
the care of Dr. August. Her transfer evaluation states that she was diaphoretic (sweating), pale,
and unable to open her eyes, although able to respond to questions. The records show that her
back was red and her pain assessment was a level of ten of ten. Dr. August ordered Ms. Castillo
transferred to the emergency room at Sierra Medical Center for evaluation.

 At the emergency room, Ms. Castillo's emergency physician noted that she presented
with a headache, difficulty with walking and speech, was lethargic, had a stiff neck, and an
inflamed and tender surgical scar. His initial impression was that she was suffering from a post
operative infection.

 Dr. August's notes from Ms. Castillo's Rio Vista file state that he never evaluated or
examined her despite being the accepting physician. The file does contain, however, two verbal
orders from Dr. August; one prescribing physical therapy, and another ordering Ms. Castillo be
sent to the emergency room.

 On August 7, 2002, Ms. Castillo underwent surgery for debridement of a serious staph
infection that reached from the outer layer of her skin down to the spinal hardware inserted
during the initial surgery. She was suffering from a serious staph meningitis that was causing her
to behave in a delusional manner. As a result of this infection, the hardware previously placed in
her back had to be removed in a third surgery, following which her back was left open for an
extended period of time to prevent further infection. Ms. Castillo alleges that the measures
required to combat her infection have now left her with permanent physical impairments. She
further asserts that the staph meningitis resulted in her suffering from permanent cognitive
impairment. She claims medical expenses of close to $700,000 as of the time she filed suit.

 Ms. Castillo subsequently filed this lawsuit alleging medical negligence against
Dr. August and the several hospitals and rehabilitation facilities at which she was treated. (4) As to
Dr. August, she specifically claimed that he had a duty to "observe and monitor" her incision for
any sign of infection, and that he failed to do so. She additionally contends that the failures of all
the defendants resulted in her staph infection and life-threatening meningitis.

 On December 2, 2003, Ms. Castillo timely filed the expert report and curriculum vitae
("CV") of Dr. Elmer J. Pacheco. Dr. August filed a motion challenging the adequacy of
Dr. Pacheco's report and a motion to dismiss him as a defendant. The motion claims that
Dr. Pacheco's report is not a good faith effort to comply with the law because Dr. Pacheco is not
qualified to render a medical opinion as to the standard of care for physiatry and infectious
disease, and because it does not adequately delineate the standard of care or how the alleged
breach of the standard of care harmed Ms. Castillo. Ms. Castillo filed a response asserting that
Dr. Pacheco's report did meet the requirements of Section 13.01 of art. 4590i, and alternatively,
requesting a grace period to permit her to cure any inadequacies in the report.

 On June 3, 2005, the trial court denied Dr. August's motion to dismiss without
explanation. Subsequently, on June 13, 2005, the trial court signed a second order both denying
Dr. August's motion to dismiss and granting Ms. Castillo a thirty-day grace period for her to
"amend, revise, and supplement" her expert report because the trial court desired additional
information regarding Dr. Pacheco's qualifications. On July 12, 2005, Ms. Castillo submitted, in
the form of a letter to her counsel, a supplement to Dr. Pacheco's initial expert report. 
Dr. August then filed a request for reconsideration of his motion to dismiss.

 On September 30, 2005, the trial court sent a letter to the parties stating that it had
reconsidered its prior order denying Dr. August's motion to dismiss. The letter stated the
following:

 (1) The medical expert report of Dr. Elmer Pacheco is not dated;


 (2) The [curriculum vitae] shows that Dr. Elmer Pacheco was practicing
medicine when the cause of action accrued;


 (3) Dr. Elmer Pacheco does include the standard of medical care for the care
of infections post-op care;


 (4) Dr. Elmer Pacheco attempts to qualify as an expert in the area in question
and thereby rendered an opinion on those standards of care; and


 (5) Dr. Pacheco states he is qualified to render an expert opinion in this area
(infections post-op care) through his experience.


The trial court then finds that because Dr. Pacheco is board certified in nuclear medicine,
oncology, and internal medicine and that Dr. August practices physiatry, Dr. Pacheco was not
qualified to render an opinion on the standard of care applicable to Dr. August in Ms. Castillo's
case. The court's letter also notes that Dr. Pacheco's report is not dated, and accordingly,
obfuscates the already muddled question of whether Dr. Pacheco was practicing medicine in an
area relevant to the claim at the time of either the injury or the report. (5)

 The trial court signed an order dismissing Dr. August as a defendant on November 3,
2005. The court's order does not reiterate any findings but rather states only that it considered
both Dr. August's initial and subsequent motions to dismiss and briefs in support thereof.

Standard of Review We review the trial court's dismissal of a medical malpractice claim for failure to provide
an adequate expert report using an abuse of discretion standard. American Transitional Care
Centers of Texas, Inc. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001). We examine whether the
trial court acted arbitrarily and without reference to any guiding rules or principles. Walker v.
Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003). We will rarely interfere with a trial court's exercise
of discretion and may not substitute our judgment for that of the trial court. Id.

 The MLIIA required a plaintiff to provide each defending physician or health care
provider with one or more expert reports relating to liability and causation. Act of May 1, 1995,
74th Leg., R.S., ch. 140, § 1, sec. 13.01(d), 1995 Tex.Gen.Laws 985, 986 (repealed 2003);
Wood v. Tice, 988 S.W.2d 829, 830 (Tex.App.--San Antonio 1999, pet. denied). The expert
report, along with a curriculum vitae of each expert, must be furnished to the defendant not later
than the 180th day after the date on which a health care liability claim is filed or the last day of
any extended period as permitted by the statute. Act of May 1, 1995, 74th Leg., R.S., ch. 140,
§ 1, sec. 13.01(d), 1995 Tex.Gen.Laws 985, 986 (repealed 2003). Where an expert report is
tendered, the defendant may challenge the report's adequacy by filing a motion to dismiss. Id. at
§ 13.01(l); Hart v. Wright, 16 S.W.3d 872, 876 (Tex.App.--Fort Worth 2000, pet. denied).

 A report authored by a person who is not qualified to testify cannot constitute an adequate
report. In re Windisch, 138 S.W.3d 507, 511 (Tex.App.--Amarillo 2004, orig. proceeding). 
Accordingly, a challenge to the adequacy of a report may be based on, among other things, a
claim that it fails to demonstrate the person rendering the opinion is qualified to testify. Id.

 The trial court must grant a motion to dismiss only if it appears to the court, after a
hearing, that the report does not represent a good faith effort to comply with the definition of an
expert report. Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(l), 1995
Tex.Gen.Laws 985, 987 (repealed 2003); Palacios, 46 S.W.3d at 878. An expert report is
defined as a fair summary of the expert's opinions regarding: (1) the applicable standards of
care; (2) the manner in which the care rendered by the physician or health care provider failed to
meet the standards; and (3) the causal relationship between that failure and the injury, harm, or
damages claimed. Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(r)(6), 1995
Tex.Gen.Laws 985, 987 (repealed 2003).

 A report cannot merely state the expert's conclusions about the statutorily required
elements. Palacios, 46 S.W.3d at 879. The expert must instead explain the basis of his
statements to link his conclusions to the facts. Id. A report that omits any of these statutory
requirements does not constitute a good faith effort. Id. In determining whether the report
represents a good faith effort, the trial court's inquiry is limited to the four corners of the report. 
Palacios, 46 S.W.3d at 878. A report comprises a good faith effort if it informs the defendant of
the specific conduct the plaintiff has called into question, and provides a basis for the trial court
to conclude that the claims have merit. Id. at 879.

 In her sole issue, Ms. Castillo contends that the trial court abused its discretion when it
dismissed her case against Dr. August for failure to file an adequate expert report. Dr. August
counters that Ms. Castillo's proffered report was inadequate because Dr. Pacheco is not qualified
to render an opinion on the applicable standard of care because the report and accompanying CV
do not establish that he was either board certified or practicing medicine in a relevant area at the
time of the injury or the time of the report. He also asserts that the report failed to adequately
address the applicable standard of care, how it was breached, and the causal relationship between
the breach and the alleged harm.

 As a preliminary matter, Ms. Castillo urges that the sole issue on appeal is whether
Dr. Pacheco was qualified to provide an expert opinion. She bases this assertion on the findings
in the trial court's September 30, 2005 letter to the parties. Letter rulings, however, do not
constitute formal findings of fact. Cherokee Water Co. v. Gregg County Appraisal Dist., 801
S.W.2d 872, 878 (Tex. 1990); In re Shockley, 123 S.W.3d 642, 648 (Tex.App.--El Paso 2003, no
pet.). The order dismissing with prejudice Ms. Castillo's claims against Dr. August does not
state the reasons for the dismissal, merely that it considered both Dr. August's motion to dismiss
and supplemental brief. Thus, in our review, we consider whether the trial court abused its
discretion for dismissing Ms. Castillo's claims against Dr. August on any of the grounds raised
below. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990)(If no findings of fact or
conclusions of law are filed, a trial court's judgment may be upheld on any legal theory
supported by the evidence.).

Dr. Pacheco's Expert Qualifications

 To comply with Sections 13.01(d) and (r)(6), the expert report must establish, on its face,
that the purported expert is qualified. Hansen v. Starr, 123 S.W.3d 13, 20 (Tex.App.--Dallas
2003, pet. denied); Chisholm v. Maron, 63 S.W.3d 903, 907 (Tex.App.--Amarillo 2001, no pet.). 
Former Article 4590i, section 14.01 sets out the requirements for an expert witness in a suit
against a physician. A person may qualify as an expert witness on the issue of whether a
physician departed from accepted standards of medical care only if the person is a physician who:
(1) is practicing medicine at the time such testimony is given or the claim arose; (2) has
knowledge of the accepted standards of medical care for the diagnosis, care, or treatment of the
illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or
experience to offer an expert opinion regarding those accepted standards of medical care. Act of
May 1, 1995, 74th Leg., R.S., ch. 140, § 2, sec. 14.01(a), 1995 Tex.Gen.Laws 985, 988
(repealed 2003). The report and accompanying CV must establish the expert's qualifications on
the basis of training and experience. In re Windisch, 138 S.W.3d 507, 511 (Tex.App.--Amarillo
2004, orig. proceeding).

 In determining if an expert is qualified on the basis of training and experience, the court
shall consider whether, at the time the claim arose or the testimony is given, the witness is board
certified or has other substantial training or experience in an area of practice relevant to the claim
and is actively practicing medicine in rendering medical care services relevant to the claim. Act
of May 1, 1995, 74th Leg., R.S., ch. 140, § 2, sec. 14.01(c), 1995 Tex.Gen.Laws 985, 988
(repealed 2003). Not every licensed medical doctor is automatically qualified to testify as an
expert on every medical question. Broders v. Heise, 924 S.W.2d 148, 152-53 (Tex. 1996). The
issue is the expert's familiarity with the specific subject matter in question. Id. at 153. The fact
that an expert is not a specialist in the particular area at issue does not, however, necessarily
disqualify him from providing an expert opinion. Hagedorn v. Tisdale, 73 S.W.3d 341, 350
(Tex.App.--Amarillo 2002, no pet.).

 Dr. Pacheco's CV shows that he is board certified in internal medicine, oncology, and
nuclear medicine. He completed an internal medicine internship and residency at University
District Hospital, Medical Sciences Campus in Rio Pierdas, Puerto Rico from 1981 until 1984. 
He was on active duty with the United States Army Medical Corps from 1984 until 1988. 
Between 1988 and 1990, he pursued a medical oncology fellowship at M.D. Anderson Cancer
Center in Houston. He participated in a nuclear medicine fellowship at William Beaumont Army
Medical Center in El Paso from 1992 until 1994. He remained at Fort Bliss in El Paso until
1996, serving as teaching staff and a staff physician in nuclear medicine and 
hematology-oncology. He subsequently began his own private practice which he continued until
1999. Dr. Pacheco's CV indicates he has practiced as a physician in Laredo and El Paso, Texas;
Sioux Falls, South Dakota; Wausau and Sheboygan, Wisconsin; Grand Junction, Colorado; and
Thomasville, Georgia. Dr. Pacheco's most recent employment as reflected on his CV is as a
physician with Pacific Coast Hematology/Oncology from April to June of 2003.

 We find that Dr. Pacheco has demonstrated that he is qualified to author an expert report
regarding the care and treatment of post-operative incisions. In his report, he states that he is a
practicing physician. He has extensive experience, both practicing and teaching medicine in
private practice as well as a hospital setting. His report and CV indicate that he was practicing
medicine in July and August of 2002 when the alleged injury occurred. His report states that he
is "called upon to identify, diagnose, and treat post-surgical and hospital-borne infections." 
Accordingly, Dr. Pacheco is qualified to opine on the standard of care applicable to Dr. August's
treatment and care of Ms. Castillo. Having found that Dr. Pacheco is a qualified expert, we look
to the contents of the report.

Dr. Pacheco's Report

 An expert report must discuss the standard of care, breach, and causation with sufficient
specificity to inform the defendant of the conduct the plaintiff has called into question and to
provide a basis for the trial court to conclude that the claims have merit. Palacios, 46 S.W.3d at
875. When the expert report's conclusory statements do not put the defendant or the trial court
on notice of the complained-of conduct, the trial court must find that the report does not
represent a good faith effort. Id. at 880.

 Dr. Pacheco's report describes the standard of care applicable to Dr. August as follows:

 Klebsiella Pneumonia: Many in-hospital infections with this organism are
associated with bacteremia and septic shock.


 Dohle bodies: Cytoplasmic inclusions seen during infection and probably
representing fragments of ribosome-rich endoplasmic reticulum.


 During illness, injury, or the peri-operative period, the dose of prednisone must be
increased. For patients undergoing surgery, hydrocortisone is given at a dose of
50 mg IV q 8 hrs, with the first dose given preoperatively. The dose can be
reduced to maintenance therapy 3-4 days after uncomplicated surgery.


 In his discussion on how he believes Dr. August breached this standard of care,
Dr. Pacheco opines that:

 The standard of care called for Dr. August to personally and vigilantly monitor
Ms. Castillo's status . . . especially since Ms. Castillo was noted to have signs and
symptoms of infection to the incision upon admission. The standard of care also
mandated that Dr. August, given the signs and symptoms of infection to the
incision site upon admission, combined with Ms. Castillo's lethargy, headaches,
difficulty in arousal, and persistent fever, personally and daily identify, examine,
diagnose, and take measures to treat Ms. Castillo's raging infection. His two
comments regarding the surgical wound include the History and Physical
Examination (dictated 10/14/02 - two and a half months after the submission
date), and a note on July 31, 2002. There is no documentation that Dr. August
ever examined Ms. Castillo's surgical wound at any other time. Dr. August's
failure to personally and daily monitor and examine Ms. Castillo's condition and
his failure to timely identify, diagnose, and treat what was a raging infection in the
incisional area and meningitis was a breach of the standard of care . . . .


 As to causation, Dr. Pacheco states that Dr. August's breach of the standard of care
"caused Ms. Castillo to suffer the meningitis and caused the need to remove the hardware that
Dr. Cho had implanted in Ms. Castillo's spine - given the advanced and uncontrolled state of the
infection in her back." Assuming without deciding that Dr. Pacheco's report adequately covers
the standard of care and how it was breached, we find this one sentence on causation insufficient.

 Dr. Pacheco does not adequately link Dr. August's actions to Ms. Castillo's subsequent
"raging infection" and staph meningitis. His narrative of events does not discuss delusional
behavior, meningitis, or a subsequent surgery to debride the wound and remove the hardware. 
Nor does he explain how the infection in her back caused the meningitis. While a claimant is not
required to conclusively prove her case through a preliminary expert report, the report may not
merely state conclusions about any of the elements. Palacios, 46 S.W.3d at 879. Dr. Pacheco's
expert report requires us to infer causation, which, under the "four corners" rule, we are not
permitted to do. Id. at 878.

 As Dr. Pacheco's report was deficient as to causation, it cannot represent a good faith
effort to comply with the statutory requirements. Consequently, the trial court had no discretion
but to dismiss Ms. Castillo's claim with prejudice. See Palacios, 46 S.W.3d at 880. 

 Based on the record before us, we cannot find that the trial court abused its discretion in
dismissing Ms. Castillo's claims with prejudice. Accordingly, we overrule Appellant's sole issue
and affirm the judgment of the trial court. 



March 13, 2008

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.

McClure, J., Not participating
1. Tex.Rev.Civ.Stat.Ann. art. 4590i was replaced by Section 74.351 of the Texas Civil
Practice and Remedies Code. Tex.Civ.Prac.&Rem.Code Ann. § 74.351 (Vernon 2005). As
this case arose before Article 4590i was repealed, all references to the MLIIA herein are to the
prior statute.
2. Neither Dr. Cho nor Providence Hospital is a party to this appeal.
3. Ecchymosis is a skin discoloration much like a bruise caused by the extravasation of
blood from ruptured blood vessels into the skin. Webster's Third New International Dictionary
718 (3d ed.1993).
4. The hospitals and rehabilitation facilities are not parties to this appeal.
5. The trial court's letter references Section 74.401(c)(1) and (2) of the Texas Civil
Practice and Remedies Code rather than Article 4590i, section 14.01(c)(1) of the pre-2003
statute. The language in these two provisions, however, did not change from one version to the
next.