# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00200-CV

**Patricia A. Perez and Daniel Whicker, Individually, and Patricia Perez as Administrator of the Estate of Elizabeth Shappee, Appellants**

**v.**

**Daughters of Charity Health Services of Austin d/b/a Seton Medical Center, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-08-000178, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Patricia A. Perez and Daniel Whicker, individually, and Patricia Perez as the administrator of the estate of Elizabeth Shappee ("appellants")[1] appeal the trial court's dismissal of a medical negligence claim for appellants' failure to comply with the expert report requirements of section 74.351 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2008). The trial court dismissed appellants' claims after it determined that their expert report did not satisfy the statutory requirements. Because we conclude that the trial court did not abuse its discretion in granting the motion to dismiss, we affirm the judgment of the trial court.

---

[1] Patricia Perez is the mother of Elizabeth Shappee; Daniel Whicker is Elizabeth's husband.

Twenty-year-old Elizabeth Shappee was diagnosed with multiple sclerosis in January 2005. After diagnosis and treatment with the drug Avonex by her primary care physician, Elizabeth's health continued to deteriorate. She sought treatment for fever, nausea, and vomiting at the Seton Southwest Medical Center ("Seton Southwest") emergency room on the evening of March 14, 2005, and was treated and discharged. She returned the next day complaining of the same symptoms as well as the additional symptoms of head and facial twitching. At the hospital, she suffered a seizure. On March 16, 2005, she was transferred from the Seton Southwest emergency room to Daughters of Charity Health Services of Austin d/b/a Seton Medical Center ("Seton") where she was admitted for the first time. Upon admission to Seton, she had an MRI scan and was evaluated by several doctors. She died on March 18, 2005.

In addition to Seton, appellants sued various doctors and other providers for medical malpractice. By their seventh amended original petition, the current live pleading, appellants named only Seton and Biogen Idec, Inc., a pharmaceutical company that sold and distributed the drug Avonex, as defendants. In addition to numerous claims against Biogen, appellants brought a medical malpractice claim against Seton arising out of Seton's care for Shappee during the three-day period in March 2005.[2]

After filing suit, appellants timely served the report of their expert, Peter Bernad, M.D., setting forth Seton's alleged negligence as required under Chapter 74 of the civil practice and remedies code. *See id.* Bernad described his credentials, the documents he reviewed, and the

---

[2] Appellants filed a non-suit as to their claims against Seton Southwest, which was granted by the trial court. Thus, only Seton is a party to this appeal.

standard of care the hospital should have employed for a patient who "presented with protracted nausea, vomiting, hyperthermia and new onset seizure of unknown etiology." He concluded that the hospital staff deviated from the standard of care as stated:

- Nursing staff failed to assess Ms. Shappee's clinical condition and monitor vital signs at least every 4 hours
- Nursing staff failed to maintain and monitor lab results
- Nursing staff failed to obtain complete history and physical
- Nursing staff failed to formulate a plan of care
- Nursing staff failed report change in condition timely to physician, including, but not limited to, on March 18, 2005 during 1500-2300 shift, failing to report new onset of nystagmus and visual disturbances, on March 17, 2005 at 2230, the onset of "garbled speech . . . moderate facial twitching and reports of inability to control tongue".
- Failed to properly and timely assess patient, including, but not limited to, Mishandling the autopsy by delaying the exam and having it performed at an affiliate hospital, Brackenridge Hospital, rather than the County Medical Examiner in compliance with state statute.
- Failed to follow physician's orders, including, but not limited to: obtaining previous MRI for comparison, failing to obtain CBC on March 17, 2005 in the a.m. as ordered.
- Failing to keep complete records by failing to record dates, times, and names of personnel leading to dis-continuity of care.
- Failure to perform Neurological Status Assessment every two hours as ordered on March 16, 17, 18 of 2005.

In concluding that the hospital did not use the care of a reasonably prudent health care provider and that this contributed to Elizabeth's death, Bernad stated:

Failing to discover declining neurological status timely and failure to report any decline in neurological status delayed treatment ultimately causing death. Failing to ascertain a complete history and physical and formulate a plan of care led to substandard care contributing to the death of Ms. Shappee.

3

Appellants rely upon these two sentences to satisfy their burden of addressing causation in the expert report.

Seton moved to dismiss the claims asserted against it pursuant to section 74.351(b) on the grounds that (i) Dr. Bernad is not qualified to render an expert report in the case; and (ii) the expert report is wholly inadequate and fails to address the statutory elements and, specifically, the causation element. *See id*. § 74.351(b). Seton urged that the expert report is not a good faith effort to comply with the requirements of setting forth the applicable standard of care, the manner in which the care failed to meet the standards, and the causal relationship between the failure and the injury suffered by the plaintiff. Therefore, Seton argued, the report does not satisfy the statutory requirements. After a hearing on the adequacy of the expert report, the district court sustained Seton's objections to the qualifications of the expert and to the adequacy of the report and granted Seton's motion to dismiss.

In a health care liability claim, the claimant must provide each defendant with one or more expert reports, including a curriculum vitae for each expert, within 120 days of filing the original petition. *Id*. § 74.351(a). An "expert report" is:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id*. § 74.351(r)(6). A report need not marshal all of the plaintiff's proof, but it must include "a fair summary" of the expert's opinion on each of the elements identified in the statute—the standard of

care, the breach or deviation from the standard of care, and the causal relationship between the breach and the injury. *Id*.; *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). To constitute a good faith effort, the report must (i) inform the defendant of the specific conduct called into question; and (ii) provide a basis for the trial court to determine that the claims have merit. *Palacios*, 46 S.W.3d at 879. A report does not fulfill these two purposes if it fails to address the standard of care, breach of the standard, and causation. Nor is it sufficient for the report to merely state the expert's conclusions regarding these elements. *Id*.; *Castillo v. August*, 248 S.W.3d 874, 880 (Tex. App.—El Paso 2008, no pet.) (report cannot merely state expert's conclusions about statutorily required elements). The expert must explain the basis of the expert's statements to link the expert's conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, the trial court must grant the motion "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*). To perform its review, the trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners. *Palacios*, 46 S.W.3d at 878.

We review a trial court's order dismissing a claim for failure to comply with the expert report requirements under an abuse-of-discretion standard. *Id*. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

5

When reviewing matters committed to the trial court's discretion, this court may not substitute its own judgment for the trial court's judgment. *See Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003) (citing *Flores v. Fourth Ct. of Appeals*, 777 S.W.2d 38, 41-42 (Tex. 1989)).

Here, the parties dispute whether the expert report fairly summarizes the alleged standard of care, how Seton allegedly breached the standard of care, and the causal relationship between any breach and the injury. Because we conclude that the trial court did not err in finding the expert report inadequate with respect to the element of causation and that this case is governed by *Bowie Memorial Hospital v. Wright*, we will limit our discussion to the element of causation. Under the *Palacios* two-prong test, as applied in *Bowie*, we must determine whether the trial court acted unreasonably and without reference to guiding principles when it dismissed the claims against Seton. *Bowie*, 79 S.W.3d at 52; *see Downer*, 701 S.W.2d at 241-42.

Appellants urge that, in his report, Dr. Bernad represents "how the specific acts and omissions of Appellee proximately caused Elizabeth's death," that Dr. Bernad "makes a positive statement of fact regarding his opinion and the underlying facts allowing this Court to believe Plaintiffs have a meritorious claim," and that a link is clearly set forth by the following statement: "Failing to ascertain a complete history and physical and formulate a plan of care led to substandard care contributing to the death of Ms. Shappee." Parsing this single sentence, appellants contend that the phrase the failure "to ascertain a complete history and physical and formulate a plan of care" constitutes an adequate statement of breach, the phrase this conduct led to "substandard care" constitutes adequate linkage, and the phrase it "contributed" to Elizabeth's death adequately identifies the harm.

6

Seton responds that the report's single statement about causation is "speculative and conclusory": "Nowhere in his report . . . does Dr. Bernad state what caused Shappee's death or describe her manner of death." Seton contends that Dr. Bernad fails to explain the cause of death, how Seton's conduct or any specific injury contributed to her unidentified cause of death, or what steps Seton could have taken to prevent a death from unknown causes.

The supreme court's opinion in *Bowie* is instructive. In that case, the plaintiff similarly relied on a single statement in the report to establish causation. 79 S.W.3d at 52-53. In *Bowie*, the plaintiff sustained injuries in a car accident. *Id*. at 50. While at the hospital her right knee and foot were x-rayed and she was diagnosed with a fractured patella. *Id*. The physician's assistant did not discover that the plaintiff had also fractured her right foot in the accident. *Id*. The plaintiff's orthopedic surgeon discovered the fractured foot only after he had already operated on the knee. *Id*. As the basis for their malpractice claim, the plaintiff alleged the failure to diagnose the foot fracture and failure to properly review diagnostic tests. *Id*. To comply with the causation element, the report stated: "[I]f the x-rays would have been correctly read and the appropriate medical personnel acted upon those findings then [the plaintiff] would have had the possibility of a better outcome." *Id*. at 52-53. The hospital defendant asserted that the report failed to adequately address the causation element between the alleged breach and the injury, and the trial court dismissed plaintiff's claims. *Id*. at 51.

Acknowledging that experts need not invoke any particular "magical words" to demonstrate that the report met the good faith effort test as to the elements, the supreme court iterated the applicable standard of review, which is critical to our analysis in this case:

7

> We have held that the only information relevant to whether a report represents a good-faith effort to comply with the statutory requirements is the report itself. . . . And, we have held that we review a trial court's decision about whether a report constitutes a good-faith effort to comply with the Act under an abuse-of-discretion standard.

*Id*. at 53 (citations omitted). Based upon the standard of review, the supreme court then concluded that the trial court could have reasonably determined that the report was conclusory and did not abuse its discretion in dismissing the claims:

> After reviewing this report, we conclude that the trial court could have reasonably determined that the report does not represent a good-faith effort to summarize the causal relationship between [the hospital]'s failure to meet the applicable standards of care and [the claimant]'s injury. . . . That is because the report simply opines that [the claimant] might have had "the possibility of a better outcome" without explaining how [the hospital]'s conduct caused injury to [the claimant]. We cannot infer from this statement, as [the claimant] ask[s] us to, that [the hospital]'s alleged breach precluded [the claimant] from obtaining a quicker diagnosis and treatment for her foot. Rather, the report must include the required information within its four corners.

*Id*. (citations omitted).

Assuming without deciding that Dr. Bernad's report adequately covers the standard of care and how it was breached, we find the two sentences on the causation element insufficient. The report does not link the hospital's actions to Shappee's death or any cause of death. Nor does it identify any specific injury that would have been prevented had the hospital complied with the standard of care. *See, e.g.*, *Constancio v. Bray*, No. 03-06-00583-CV, 2008 Tex. App. LEXIS 6652, at *19 (Tex. App.—Sept. 5, 2008, no pet. h.); *CHCA Mainland, L.P. v. Dickie*, No. 14-07-00831-CV, 2008 Tex. App. LEXIS 6787, at *28-29 (Tex. App.—Houston [14th Dist.] Aug. 21, 2008,

8

no pet. h.); *Wooten v. Samlowski*, No. 10-07-00305-CV, 2008 Tex. App. LEXIS 3709, at *18-19 (Tex. App.—Waco May 21, 2008, pet. filed). While a claimant is not required to conclusively prove her case through a preliminary expert report, the report may not merely state conclusions about any of the elements. *See Bowie*, 79 S.W.3d at 53. Importantly, Dr. Bernad's expert report requires us to infer causation, which, under the "four corners" rule, we are not permitted to do. *See, e.g.*, *Constancio*, 2008 Tex. App. LEXIS 6652, at *9; *Castillo*, 248 S.W.3d at 883 (citing *Palacios*, 46 S.W.3d at 878). As the expert report was deficient as to causation, it cannot represent a good faith effort to comply with the statutory requirements. The trial court then had no discretion but to dismiss appellants' claims against Seton. *See Palacios*, 46 S.W.3d at 880.

For the same reasons as in *Bowie* and based on the record before us, we cannot conclude that the trial court abused its discretion when it determined that the report did not represent a good faith effort to meet the expert report requirements. Accordingly, we overrule appellants' issues and affirm the judgment of the trial court.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: October 10, 2008

9