TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00200-CV






Patricia A. Perez and Daniel Whicker, Individually, and Patricia Perez

as Administrator of the Estate of Elizabeth Shappee, Appellants


v.


Daughters of Charity Health Services of Austin d/b/a Seton Medical Center, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. D-1-GN-08-000178, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 Patricia A. Perez and Daniel Whicker, individually, and Patricia Perez as the
administrator of the estate of Elizabeth Shappee ("appellants") (1) appeal the trial court's dismissal of
a medical negligence claim for appellants' failure to comply with the expert report requirements of
section 74.351 of the civil practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351 (West Supp. 2008). The trial court dismissed appellants' claims after it determined that
their expert report did not satisfy the statutory requirements. Because we conclude that the trial court
did not abuse its discretion in granting the motion to dismiss, we affirm the judgment of the
trial court.

 Twenty-year-old Elizabeth Shappee was diagnosed with multiple sclerosis in
January 2005. After diagnosis and treatment with the drug Avonex by her primary care physician,
Elizabeth's health continued to deteriorate. She sought treatment for fever, nausea, and vomiting
at the Seton Southwest Medical Center ("Seton Southwest") emergency room on the evening of
March 14, 2005, and was treated and discharged. She returned the next day complaining of the same
symptoms as well as the additional symptoms of head and facial twitching. At the hospital, she
suffered a seizure. On March 16, 2005, she was transferred from the Seton Southwest emergency
room to Daughters of Charity Health Services of Austin d/b/a Seton Medical Center ("Seton") where
she was admitted for the first time. Upon admission to Seton, she had an MRI scan and was
evaluated by several doctors. She died on March 18, 2005.

 In addition to Seton, appellants sued various doctors and other providers for medical
malpractice. By their seventh amended original petition, the current live pleading, appellants named
only Seton and Biogen Idec, Inc., a pharmaceutical company that sold and distributed the drug
Avonex, as defendants. In addition to numerous claims against Biogen, appellants brought a medical
malpractice claim against Seton arising out of Seton's care for Shappee during the three-day period
in March 2005. (2)

 After filing suit, appellants timely served the report of their expert, Peter Bernad,
M.D., setting forth Seton's alleged negligence as required under Chapter 74 of the civil practice
and remedies code. See id. Bernad described his credentials, the documents he reviewed, and the
standard of care the hospital should have employed for a patient who "presented with protracted
nausea, vomiting, hyperthermia and new onset seizure of unknown etiology." He concluded that the
hospital staff deviated from the standard of care as stated:



 Nursing staff failed to assess Ms. Shappee's clinical condition and monitor
vital signs at least every 4 hours
 Nursing staff failed to maintain and monitor lab results
 Nursing staff failed to obtain complete history and physical
 Nursing staff failed to formulate a plan of care
 Nursing staff failed report change in condition timely to physician, including,
but not limited to, on March 18, 2005 during 1500-2300 shift, failing to
report new onset of nystagmus and visual disturbances, on March 17, 2005
at 2230, the onset of "garbled speech . . . moderate facial twitching and
reports of inability to control tongue".
 Failed to properly and timely assess patient, including, but not limited to,
Mishandling the autopsy by delaying the exam and having it performed at an
affiliate hospital, Brackenridge Hospital, rather than the County Medical
Examiner in compliance with state statute.
 Failed to follow physician's orders, including, but not limited to: obtaining
previous MRI for comparison, failing to obtain CBC on March 17, 2005 in
the a.m. as ordered.
 Failing to keep complete records by failing to record dates, times, and names
of personnel leading to dis-continuity of care.
 Failure to perform Neurological Status Assessment every two hours as
ordered on March 16, 17, 18 of 2005.


 


 In concluding that the hospital did not use the care of a reasonably prudent health care
provider and that this contributed to Elizabeth's death, Bernad stated:


 Failing to discover declining neurological status timely and failure to report any
decline in neurological status delayed treatment ultimately causing death. Failing to
ascertain a complete history and physical and formulate a plan of care led to
substandard care contributing to the death of Ms. Shappee.


 

Appellants rely upon these two sentences to satisfy their burden of addressing causation in the
expert report.

 Seton moved to dismiss the claims asserted against it pursuant to section 74.351(b)
on the grounds that (i) Dr. Bernad is not qualified to render an expert report in the case; and (ii) the
expert report is wholly inadequate and fails to address the statutory elements and, specifically,
the causation element. See id. § 74.351(b). Seton urged that the expert report is not a good faith
effort to comply with the requirements of setting forth the applicable standard of care, the manner
in which the care failed to meet the standards, and the causal relationship between the failure and
the injury suffered by the plaintiff. Therefore, Seton argued, the report does not satisfy the statutory
requirements. After a hearing on the adequacy of the expert report, the district court sustained
Seton's objections to the qualifications of the expert and to the adequacy of the report and granted
Seton's motion to dismiss.

 In a health care liability claim, the claimant must provide each defendant with one
or more expert reports, including a curriculum vitae for each expert, within 120 days of filing the
original petition. Id. § 74.351(a). An "expert report" is:


 a written report by an expert that provides a fair summary of the expert's opinions as
of the date of the report regarding applicable standards of care, the manner in which
the care rendered by the physician or health care provider failed to meet the
standards, and the causal relationship between that failure and the injury, harm, or
damages claimed.



Id. § 74.351(r)(6). A report need not marshal all of the plaintiff's proof, but it must include "a fair
summary" of the expert's opinion on each of the elements identified in the statute--the standard of
care, the breach or deviation from the standard of care, and the causal relationship between the
breach and the injury. Id.; American Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d
873, 878 (Tex. 2001). To constitute a good faith effort, the report must (i) inform the defendant of
the specific conduct called into question; and (ii) provide a basis for the trial court to determine that
the claims have merit. Palacios, 46 S.W.3d at 879. A report does not fulfill these two purposes if
it fails to address the standard of care, breach of the standard, and causation. Nor is it sufficient for
the report to merely state the expert's conclusions regarding these elements. Id.; Castillo v. August,
248 S.W.3d 874, 880 (Tex. App.--El Paso 2008, no pet.) (report cannot merely state expert's
conclusions about statutorily required elements). The expert must explain the basis of the expert's
statements to link the expert's conclusions to the facts. Bowie Mem'l Hosp. v. Wright, 79 S.W.3d
48, 52 (Tex. 2002) (quoting Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999)). If a plaintiff timely
files an expert report and the defendant moves to dismiss because of the report's inadequacy, the
trial court must grant the motion "only if it appears to the court, after hearing, that the report does
not represent an objective good faith effort to comply with the definition of an expert report in
Subsection (r)(6)." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l). To perform its review, the trial
court should look no further than the report itself, because all the information relevant to the inquiry
is contained within the document's four corners. Palacios, 46 S.W.3d at 878.

 We review a trial court's order dismissing a claim for failure to comply with
the expert report requirements under an abuse-of-discretion standard. Id. A trial court abuses its
discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules
and principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 
When reviewing matters committed to the trial court's discretion, this court may not substitute
its own judgment for the trial court's judgment. See Walker v. Gutierrez, 111 S.W.3d 56, 63
(Tex. 2003) (citing Flores v. Fourth Ct. of Appeals, 777 S.W.2d 38, 41-42 (Tex. 1989)).

 Here, the parties dispute whether the expert report fairly summarizes the alleged
standard of care, how Seton allegedly breached the standard of care, and the causal relationship
between any breach and the injury. Because we conclude that the trial court did not err in finding
the expert report inadequate with respect to the element of causation and that this case is governed
by Bowie Memorial Hospital v. Wright, we will limit our discussion to the element of causation. 
Under the Palacios two-prong test, as applied in Bowie, we must determine whether the trial court
acted unreasonably and without reference to guiding principles when it dismissed the claims against
Seton. Bowie, 79 S.W.3d at 52; see Downer, 701 S.W.2d at 241-42.

 Appellants urge that, in his report, Dr. Bernad represents "how the specific acts and
omissions of Appellee proximately caused Elizabeth's death," that Dr. Bernad "makes a positive
statement of fact regarding his opinion and the underlying facts allowing this Court to believe
Plaintiffs have a meritorious claim," and that a link is clearly set forth by the following statement:
"Failing to ascertain a complete history and physical and formulate a plan of care led to substandard
care contributing to the death of Ms. Shappee." Parsing this single sentence, appellants contend
that the phrase the failure "to ascertain a complete history and physical and formulate a plan of care"
constitutes an adequate statement of breach, the phrase this conduct led to "substandard care"
constitutes adequate linkage, and the phrase it "contributed" to Elizabeth's death adequately
identifies the harm.

 Seton responds that the report's single statement about causation is "speculative
and conclusory": "Nowhere in his report . . . does Dr. Bernad state what caused Shappee's death or
describe her manner of death." Seton contends that Dr. Bernad fails to explain the cause of death,
how Seton's conduct or any specific injury contributed to her unidentified cause of death, or what
steps Seton could have taken to prevent a death from unknown causes.

 The supreme court's opinion in Bowie is instructive. In that case, the plaintiff
similarly relied on a single statement in the report to establish causation. 79 S.W.3d at 52-53. In
Bowie, the plaintiff sustained injuries in a car accident. Id. at 50. While at the hospital her right
knee and foot were x-rayed and she was diagnosed with a fractured patella. Id. The physician's
assistant did not discover that the plaintiff had also fractured her right foot in the accident. Id. The
plaintiff's orthopedic surgeon discovered the fractured foot only after he had already operated on
the knee. Id. As the basis for their malpractice claim, the plaintiff alleged the failure to diagnose
the foot fracture and failure to properly review diagnostic tests. Id. To comply with the causation
element, the report stated: "[I]f the x-rays would have been correctly read and the appropriate
medical personnel acted upon those findings then [the plaintiff] would have had the possibility of
a better outcome." Id. at 52-53. The hospital defendant asserted that the report failed to adequately
address the causation element between the alleged breach and the injury, and the trial court dismissed
plaintiff's claims. Id. at 51.

 Acknowledging that experts need not invoke any particular "magical words" to
demonstrate that the report met the good faith effort test as to the elements, the supreme court
iterated the applicable standard of review, which is critical to our analysis in this case:

 We have held that the only information relevant to whether a report represents a
good-faith effort to comply with the statutory requirements is the report itself. . . .
And, we have held that we review a trial court's decision about whether a report
constitutes a good-faith effort to comply with the Act under an abuse-of-discretion
standard.



Id. at 53 (citations omitted). Based upon the standard of review, the supreme court then concluded
that the trial court could have reasonably determined that the report was conclusory and did not
abuse its discretion in dismissing the claims:


 After reviewing this report, we conclude that the trial court could have reasonably
determined that the report does not represent a good-faith effort to summarize the
causal relationship between [the hospital]'s failure to meet the applicable standards
of care and [the claimant]'s injury. . . . That is because the report simply opines that
[the claimant] might have had "the possibility of a better outcome" without
explaining how [the hospital]'s conduct caused injury to [the claimant]. We cannot
infer from this statement, as [the claimant] ask[s] us to, that [the hospital]'s alleged
breach precluded [the claimant] from obtaining a quicker diagnosis and treatment for
her foot. Rather, the report must include the required information within its four
corners.



Id. (citations omitted).

 Assuming without deciding that Dr. Bernad's report adequately covers the standard
of care and how it was breached, we find the two sentences on the causation element insufficient. 
The report does not link the hospital's actions to Shappee's death or any cause of death. Nor does
it identify any specific injury that would have been prevented had the hospital complied with the
standard of care. See, e.g., Constancio v. Bray, No. 03-06-00583-CV, 2008 Tex. App. LEXIS 6652,
at *19 (Tex. App.--Sept. 5, 2008, no pet. h.); CHCA Mainland, L.P. v. Dickie, No. 14-07-00831-CV, 2008 Tex. App. LEXIS 6787, at *28-29 (Tex. App.--Houston [14th Dist.] Aug. 21, 2008,
no pet. h.); Wooten v. Samlowski, No. 10-07-00305-CV, 2008 Tex. App. LEXIS 3709, at *18-19
(Tex. App.--Waco May 21, 2008, pet. filed). While a claimant is not required to conclusively
prove her case through a preliminary expert report, the report may not merely state conclusions about
any of the elements. See Bowie, 79 S.W.3d at 53. Importantly, Dr. Bernad's expert report requires
us to infer causation, which, under the "four corners" rule, we are not permitted to do. See, e.g.,
Constancio, 2008 Tex. App. LEXIS 6652, at *9; Castillo, 248 S.W.3d at 883 (citing Palacios,
46 S.W.3d at 878). As the expert report was deficient as to causation, it cannot represent a good
faith effort to comply with the statutory requirements. The trial court then had no discretion but to
dismiss appellants' claims against Seton. See Palacios, 46 S.W.3d at 880.

 For the same reasons as in Bowie and based on the record before us, we cannot
conclude that the trial court abused its discretion when it determined that the report did not represent
a good faith effort to meet the expert report requirements. Accordingly, we overrule appellants'
issues and affirm the judgment of the trial court.



 __________________________________________

 Jan P. Patterson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: October 10, 2008
1. Patricia Perez is the mother of Elizabeth Shappee; Daniel Whicker is Elizabeth's husband.
2. Appellants filed a non-suit as to their claims against Seton Southwest, which was granted
by the trial court. Thus, only Seton is a party to this appeal.