# NO. 12-12-00241-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *PATRICK CONBOY,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | | |
| *LINDALE HEALTH CARE, LLC,*<br>*LINDALE HEALTH CARE, LLC,*<br>*D/B/A COLONIAL NURSING AND*<br>*REHABILITATION CENTER AND*<br>*WENDELL P. HAND, D.O.,* | § | *JUDICIAL DISTRICT COURT* |
| *APPELLEES* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Patrick Conboy appeals the trial court's dismissal of his suit for failing to file an adequate expert report as required under Chapter 74 of the Texas Civil Practice and Remedies Code.[1] In his sole issue on appeal, he argues that the trial court abused its discretion when it dismissed his suit. We sever and remand in part and affirm in part.

## BACKGROUND

Jack Conboy, seventy-seven years of age, was a regular patient at Colonial Nursing and Rehabilitation Center, which is a skilled nursing, long-term health care facility. Wendell P. Hand, D.O., is a physician who treats patients at Colonial, including Jack. Jack was not a full time resident of the facility. Rather, he maintained his own home nearby, and would sometimes leave Colonial to go there.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2011).

Jack had an extensive history of falls resulting in serious injuries. Jack also had various other conditions in his medical history, including, but not limited to, cognitive problems related to reasoning and problem solving skills with mild memory impairment, cardiovascular system illnesses, diabetes, and pneumonia.

On the evening of December 23, 2009, Jack had his regular medication combination, consisting of Hydrocodone, Benadryl, and alcohol. Shortly before midnight, against the advice of Colonial staff members, Jack left Colonial to check on his dog. Over twelve hours later at approximately 12:30 p.m. on Christmas Eve, a neighbor found Jack lying on the ground next to his driveway. Jack was rushed to the hospital, where it was determined that he suffered from hypothermia and was unresponsive. Jack also had a skull fracture, indicating that he had fallen.

Members of the hospital staff admitted Jack to the intensive care unit, placed him on mechanical ventilation, and began treatment for the skull fracture and organ failure that resulted from his fall and subsequent hypothermia. The treatment was unsuccessful, and on January 13, 2010, Jack was placed in hospice care. Jack's condition continued to deteriorate, and he died on January 19, 2010.

Patrick Conboy, acting in his individual capacity as a wrongful death beneficiary, and as the personal representative of Jack's estate, filed suit against Dr. Hand and Colonial claiming that they were negligent in treating Jack, which ultimately caused his death. Pursuant to the requirements in Chapter 74, Patrick retained Michael Langan, M.D., who reviewed the medical records and drafted an expert report. In the report, Dr. Langan concluded that Dr. Hand and Colonial breached the standard of care, which proximately caused Jack's death. Dr. Hand and Colonial filed motions to dismiss Patrick's lawsuit, alleging that Dr. Langan failed to adequately address the causation element. The trial court agreed, but granted a thirty day extension to correct the deficiencies in the report. After Dr. Langan filed a second expert report, Dr. Hand and Colonial filed another motion to dismiss, again alleging that Dr. Langan failed to adequately address causation. The trial court agreed and dismissed the suit, awarding attorney's fees to Dr. Hand and Colonial. This appeal followed.

In his sole issue, Patrick contends that the trial court abused its discretion when it granted Dr. Hand's and Colonial's motions to dismiss Patrick's health care liability claim against them because Dr. Langan failed to provide an adequate opinion on causation.

## Standard of Review

We review a trial court's Section 74.351 ruling for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, without reference to any guiding rules or principles. *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex. 2003). A trial court acts arbitrarily and unreasonably if it could have reached only one decision, but instead reached a different one. *See Teixeira v. Hall,* 107 S.W.3d 805, 807 (Tex. App.—Texarkana 2003, no pet.). To that end, a trial court abuses its discretion when it fails to analyze or apply the law correctly. *In re Sw. Bell Tel. Co.,* 226 S.W.3d 400, 403 (Tex. 2007) (citing *In re Kuntz,* 124 S.W.3d 179, 181 (Tex. 2003)).  We may not substitute our judgment for that of the trial court. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

## Applicable Law

An "expert report" is a written report that provides a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the defendant failed to meet those standards, and the causal relationship between the defendant's failure and the plaintiff's injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2011). In setting out the expert's opinions on each of the required elements, the report must provide enough information to fulfill two purposes if it is to constitute a good faith effort. *Palacios,* 46 S.W.3d at 879. An objective good faith effort to comply with the statute is made if the report (1) informs the defendant of the specific conduct that the plaintiff has called into question and (2) allows the trial court to conclude that the claim has merit. *Id.* at 879. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not provide the necessary information to fulfill the dual purposes. *Id.* Rather, the expert must explain the basis of his statements to link his conclusions to the facts. *Bowie Mental Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002). In our review of an expert report, we are limited to the report's contents, contained within the four corners of the report, in determining whether the

report manifests a good faith effort to comply with the statutory definition of an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l* ); *Palacios,* 46 S.W.3d at 878.

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent this act or omission, the harm would not have occurred. ***Costello v. Christus Santa Rosa Health Care Corp.****,* 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.). Merely providing some insight into the plaintiff's claims does not adequately address causation. ***Wright****,* 79 S.W.3d at 53. Accordingly, causation cannot be inferred; it must be clearly stated. ***Castillo v. August****,* 248 S.W.3d 874, 883 (Tex. App.—El Paso 2008, no pet.). Indeed, we may not fill in gaps in a report by drawing inferences or guessing what the expert meant or intended. ***Austin Heart, P.A. v. Webb****,* 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.).

However, a plaintiff need not present evidence in the report as if it were actually litigating the merits. ***Palacios****,* 46 S.W.3d at 879. The report can be informal, meaning that it does not have to meet the same requirements as the evidence offered in a summary judgment proceeding or at trial. ***Id.***

## Discussion

Dr. Langan's report is approximately fifteen single-spaced pages. He went to great lengths to explain Jack's extensive medical history, including Jack's propensity for injurious falls. Dr. Langan states that two factors, working in combination, caused Jack's death.  First, Dr. Langan explains that Dr. Hand prescribed a combination of Benadryl, Hydrocodone, and alcohol, which together created a "triple whammy" and made a fall very likely.  He states further that Dr. Hand and Colonial knew or should have known that a fall was likely, especially given Jack's well documented history of falls.

Second, Dr. Langan asserts that Jack was free to leave Colonial and when he did so, no procedures were in place to ensure his safety.  Specifically, he asserts that Dr. Hand should have written an order admitting Jack as a full time inpatient at Colonial or, alternatively, that Dr. Hand and/or Colonial staff members should have physically prevented Jack from leaving or called the police to check on Jack's whereabouts. Logically, it follows from Dr. Langan's report that he concludes Jack would likely have survived had either of these two factors not been present.

Nothing in the record before us shows what time Jack fell.  It is possible that he fell when he arrived home around midnight.  However, Dr. Langan would be required to speculate in order

to arrive at that conclusion.  Jack was discovered more than twelve hours after voluntarily checking out of the facility.  Moreover, it appears that Colonial staff members recommended that he not leave, but Jack nevertheless left the facility, as he had done in the past. Specifically, Dr. Langan, in his discussion of the facts, stated in the report as follows:

> On 12/24 Mr. Conboy signed himself out stating the need to check on his dog.  Physical discharge summary notes fair standing balance, decreased upper and lower extremity strength, fair to poor safety awareness.  And non-compliance.  Physical therapy discharge summary added that he is not ready for discharge and recommended continued skilled service.  More than 12 hours later he was found by a neighbor lying supine on the ground beside his driveway cold to touch, moaning, and confused.

It is equally possible that Jack fell the next morning.  Dr. Langan states in his report that for Jack to have developed hypothermia, he had to have been outside for a number of hours.  Assuming he fell the next morning, Jack could have still been lying on the ground for a number of hours, depending on the time of the fall.

Moreover, there is a discrepancy in the record as to whether Jack received the "triple whammy" at 8:00 p.m. or 10:00 p.m.  But Dr. Langan did not state in his report whether, based on either of these times, Jack would have been under the effect of the medications when he left Colonial shortly before midnight.  He also does not discuss how long the medications would have affected Jack and the length of time that the medications would have made a fall likely.

Because we do not know when Jack fell, we are left to speculate not only about the time of the fall, but whether he was under the influence of the medications at that time.  Since Dr. Langan states that the combination of medications was a key factor that resulted in Jack's death, it was critical to determine whether he was under the influence of the medication at the time of the fall. *See Conner v. Patrick*, No. 12-10-00405-CV, 2012 WL 1264464, at *5-6 (Tex. App.— Tyler Apr. 4, 2012, pet. denied).  We cannot determine that information based on his report.

Finally, Dr. Langan stated that the failure to admit Jack to the facility as a full time inpatient was equally responsible for Jack's death.  As part of his argument, Patrick assumes that Dr. Hand and Colonial had a duty to restrain Jack from leaving.  That issue was not raised or briefed by the parties in this appeal.  We do not presume or address the existence of such a duty. In any event, Jack left Dr. Hand's and Colonial's care on his own volition, as he had often done in the past.

Dr. Langan provided some insight into the events that brought about Jack's death. But when analyzing the report, the trial court would have to infer the events that actually caused Jack's death, which occurred several weeks later. The trial court, acting within its discretion, could have reasonably concluded that the report failed to provide a basis showing that Patrick's claims against Colonial and Dr. Hand had merit. In other words, we cannot say that the trial court abused its discretion when it dismissed Patrick's claims.

Patrick also contends that Dr. Langan was not required to rule out every possible cause, at least for purposes of satisfying the expert report requirement in a healthcare liability claim. *See, e.g., Hillery v. Kyle*, 371 S.W.3d 482, 492 (Tex. App.—Houston [1st Dist.] 2012, no pet.). While Dr. Langan may not have been required to rule out all possible causes, he must establish in his report some causal connection between the defendants' conduct and the injuries Jack suffered, and that the defendants proximately caused the injuries suffered. The statements concerning causation cannot be inferred, speculative, or conclusory. *See Wright,* 79 S.W.3d at 53; *Castillo,* 248 S.W.3d at 883; *Webb,* 228 S.W.3d at 279.

Similarly, Patrick relies on the Texas Supreme Court's recent opinion in *Certified EMS, Inc. v. Potts*. *See generally* 392 S.W.3d 625 (Tex. 2013). In *Potts*, the court held that an expert report that satisfies the statutory requirements for one theory of liability alleged against a defendant is sufficient for the entire suit to proceed against that defendant. *See id.* at 632. Dr. Langan's report failed to adequately establish causation on any theory of liability against any defendant. Therefore, the holding in *Potts* is not applicable here.

The trial court or a court of appeals may grant a thirty day extension in which to amend a timely filed but deficient expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *Leland v. Brandal*, 257 S.W.3d 204, 207–08 (Tex. 2008). However, the statute allows only a single extension. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). Once an extension has been granted by the trial court, the court of appeals is without authority to grant another extension. *See id.* Because the trial court previously granted Patrick an extension to amend his expert report, we are without authority to grant another extension and must dismiss his suit. Accordingly, Patrick's sole issue is overruled.

6

## DISPOSITION

We have overruled Patrick's sole issue. However, the trial court awarded reasonable attorney's fees and costs, but did not determine the amount to be awarded. Accordingly, we sever the issue of attorney's fees and *remand* for a determination of the amount of attorney's fees and costs to be awarded Dr. Hand and Colonial. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(1) (West 2011). In all other respects, we *affirm* the judgment of the trial court.

**BRIAN HOYLE**
Justice


Opinion delivered August 29, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 29, 2013**

**NO. 12-12-00241-CV**

**PATRICK CONBOY,**
Appellant
V.
**LINDALE HEALTH CARE, LLC, LINDALE HEALTH CARE, LLC, D/B/A COLONIAL NURSING AND REHABILITATION CENTER AND WENDELL P. HAND, D.O.,**
Appellees

---

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 11-2064-B)

---

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, it is the opinion of this Court that there was error in the judgment of the court below insofar as it did not determine the amount to be awarded for attorney's fees and costs.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be **remanded** for a determination of the amount of attorney's fees and costs to be awarded Dr. Hand and Colonial. In all other respects, the judgment of the trial court is **affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*