**STRAITWAY TRANSPORT, INCORPORATED and Domingo Diaz, Appellants,**

**v.**

**Dan MUNDORF, Appellee.**

**No. 13–98–173–CV.**

Court of Appeals of Texas, Corpus Christi.

Nov. 18, 1999.

Kelly K. McKinnis, McAllen, Marc E. Gravely, San Antonio, for appellant.

Robert N. Carnahan, Corpus Christi, for appellee.

Before Chief Justice SEERDEN and Justices DORSEY and CHAVEZ.

## OPINION

Opinion by Justice DORSEY.

Domingo Diaz, driving a tractor-trailer rig owned by Straitway Transport, Inc., hit four calves that had wandered onto Interstate Highway 37. Diaz and Straitway (herein, collectively "Straitway") sued Dan Mundorf, the owner and keeper of the calves, for damages. A jury rendered a take-nothing verdict in favor of Mundorf. By six issues, Straitway appeals the judgment. While we find that Straitway timely perfected its appeal, we affirm the trial court's judgment.

### NOTICE OF THE JUDGMENT AND TIMELINESS OF THE APPEAL

Straightway complains the trial court erred by failing to "reset deadlines" pursuant to Straitway's motion under Texas Rule of Civil Procedure 306a. Rule 306a provides the dates for starting the time periods from the signing of a judg-

ment. Those time periods relate to the deadlines for filing appeal, post-trial motions and expiration of the trial court's plenary jurisdiction. Generally, the date the judgment or order is signed is the beginning period. Tex.R. Civ. P. 306a(1). The rule requires that the clerk shall immediately give notice to the parties or their attorneys when the final judgment or other appealable order is signed. *Id.* at 306a(3). However, if the party adversely affected by the judgment has not received it within twenty (20) days from the date it is signed, and if that party does not have actual notice that it has been signed, the time period begins running at a later date. *Id.* at 306a(4). In this instance, the time period begins at the earlier of either the date the party receives notice from the clerk or acquires actual knowledge the order has been signed, so long as neither of these dates occur more than ninety days after the date the order was signed. *Id.*

When a party seeks to establish that the extended beginning date applies under 306a(4), the rule requires that the party must "prove in the trial court, on sworn motion and notice, the date on which the party or his attorney first either received a notice of the judgment or acquired actual knowledge of the signing, and that this date was more than twenty days after the judgment was signed." Tex.R. Civ. P. 306a(5).

In this case, the final judgment was signed on December 5, 1997. Counsel for Mundorf received notice from the court on December 19, 1997. Straitway did not receive a copy until January 6, 1998. On February 5, Straitway filed its verified motion requesting the court recognize that it first received notice of the judgment on January 6. The court held a hearing on this motion on March 18. There, the court accepted that Straitway's counsel did not receive actual notice of the judgment until January 6. However, the court relied on *Welborn Mortgage Corp. v. Knowles*, 851 S.W.2d 328 (Tex.App.—Dallas 1993, writ denied), in denying Straitway's motion to restart the deadlines.

In *Welborn*, the Dallas Court of Appeals reversed a fact finding made by a trial court regarding when a party received actual notice of the judgment. However, *Welborn* is distinguishable, both factually and legally. In *Welborn*, the attorney for the Welborn's opponent sent a *signed copy of the judgment* to Welborn's attorney on August 7th. The signed copy of the judgment was sent attached to a copy of a letter to the court that indicated the attached judgment was merely an unsigned proposed judgment. Welborn's counsel read the cover letter, but did not check to see that he had, in fact, received a signed judgment. Thus, while Welborn's counsel actually had a signed copy of the judgment on August 8th, he did not know the judgment had been entered until October 16th, when he received another letter from opposing counsel. He moved the trial court to find he lacked actual notice of the judgment until October 16th. He argued that he relied on the cover letter and did not look at the attached judgment. The trial court entered a finding under Rule 306a that Welborne's attorney did not have actual notice of the judgment until October 16th.

The Dallas court of appeals reversed the trial court's finding. It stated that "means of knowledge with the duty of using these means are in equity equivalent to knowledge itself. Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge." *Welborn*, 851 S.W.2d at 332. Focusing on the lack of ordinary diligence exhibited by Welborn's lawyer, the court held that Welborn's counsel had actual notice of the judgment prior to October 16th. *Id.*

Mundorf points to confusing language in the *Welborn* case in arguing that Straitway was charged with knowing a judgment had been signed and entered in its case as a matter of law and failed to use diligence in contacting the court to determine if a judg-

ment had been entered. Thus, he argues that Straitway, like *Welborn,* had "implied actual notice" of the judgment. We find that language to be inapplicable. In dicta, the *Welborn* court stated:

> Welborn's counsel admitted he had a signed copy of the judgment in his possession about August 8, 1991. He further admitted he did not read anything other than the cover letter. Means of knowledge with the duty of using these means are in equity equivalent to knowledge itself. Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge.... He said he relied on opposing counsel's statements in the letter. Passive good faith will not serve to excuse willful ignorance. *San Antonio & A.P. Ry. v. Sehorn,* 127 S.W. 246, 247 (Tex.Civ.App.—San Antonio 1910, no writ).
>
> As a lawyer in the pending case, the law charges Welborn's counsel with notice of all judgments the trial court signed affecting the case.... Whatever puts a person on inquiry amounts in law to notice. Welborn's counsel had a duty to inquire and should have exercised ordinary diligence to do so.
>
> Under the legal definition of actual knowledge, there is no room for ordinary minds to differ on the proper conclusion to draw from the evidence in this case. We conclude the trial court improperly applied the law to what are essentially undisputed facts. We hold the trial court erred in finding that Welborn did not have actual knowledge until October 21....

*Welborn,* 851 S.W.2d at 332. We find the language regarding duty of diligence and finding "implied actual knowledge" is limited to the facts in *Welborn,* namely, the situation where an attorney has admitted to actual physical receipt of the signed judgment but argues lack of knowledge. Accordingly, we do not find the *Welborn* case on point.

On the contrary, we find Rule 306a clear on its face. If the party opposing the judgment claims to have failed to receive either notice from the clerk or actual notice of the judgment more than twenty but less than ninety days from the date of the judgment, he must seek a fact finding from the trial court on the earliest day the party received notice. The trial court must enter a finding that the party did or did not prove that date. If the party proves the date, the appellate timetables automatically restart. If the party does not, the time periods run from the date of the judgment.

In this case, instead of making a limited fact finding, the court entered eleven findings of fact and two conclusions of law. The court made the following fact findings: Mundorf's counsel sent a proposed judgment to the court and Straitway's counsel on November 21, 1997, requesting entry of the judgment if there was no objection as to form, and no objection was made. The judgment was signed on December 5, and physically received by the Straitway plaintiffs on January 6. The court also found that "no communication was made by [the Straitway plaintiffs] ... to the Defendant, District Judge nor the District Clerk ... after Straitway received the Defendant's letter to the Court containing a proposed judgment." The court also made a fact finding that it denied both Straitway's request for extension of time under Rule 306a and motion for new trial. Additionally, the court made the following conclusions of law: that Straitway's motion to restart appellate deadlines was denied under *Welborn* and the court had no jurisdiction to hear the motion for new trial. While the findings are somewhat confusing, it is clear from the transcript of the hearing on post trial motions that the trial court made a fact finding that Straitway did not receive actual notice until January 6. Accordingly, the appellate deadlines began on January 6th.

■ Straitway had thirty days to file its motion for new trial or notice of appeal. Tex.R.App. P. 26.1; Tex.R. Civ. P. 329b(a).

Straitway filed its motion for new trial on February 5. Straitway then had ninety days from the date they received notice to perfect its appeal. TEX.R.APP. P. 26.1(a)(2). Straitway, Inc. filed its notice of appeal on April 7. Straitway's co-plaintiff, Domingo Diaz, filed his notice of appeal on April 8. Straitway's notice of appeal was due on April 6th. TEX.R.APP. P. 4.2(a)(1), 26.1; TEX.R. CIV. P. 4. April 6th was a Monday. TEX.R. CIV. P. 4. "A document received within ten days after the filing deadline is considered timely filed if it was sent to the proper clerk by United States Postal Service first-class, express, registered, or certified mail; it was placed in an envelope or wrapper properly addressed and stamped; and it was deposited in the mail on or before the last day for filing." TEX.R.APP. P. 9.2(b)(1). We find adequate proof in the court's file to show appellants mailed their notices of appeal on April 6th. TEX.R.APP. P. 9.2(b)(1), 9.2(b)(2). Thus, this appeal is timely filed.

### FAILURE TO DESIGNATE MUNDORF AS GATE EXPERT

■ Straitway next argues the trial court erred in allowing Mundorf to testify about the advantages and disadvantages of various methods to secure the enclosure of cattle. Straitway objected that Mundorf, although properly identified as a witness, did not designate himself as an *expert witness* in his discovery responses, and that the testimony he offered was that of an expert and not of a fact witness. Accordingly, appellant argues, his expert testimony should have been excluded because of his failure to so designate himself.

We disagree. The issue in the case was whether Mundorf, as the owner and keeper of the calves, was negligent in enclosing them so as to allow them to escape. He used baling wire to keep the gate on the enclosure shut. The discussion at trial focused on whether he was negligent in using wire to secure the gate rather than some other means, such as a cattle guard

or chain. Mundorf was a veteran rancher who had kept and enclosed cattle for years. He could testify as to how he penned them and the reasons for his decision over alternative choices. When he is charged with making a negligent decision, he can explain why his choice was the correct one, by giving his opinion as to the quality of the alternatives. Such testimony consisting of opinions and inferences was based on his own experiences and perceptions that would be helpful to a clear understanding of his testimony. *See* TEX.R. EVID 701. Mundorf, a veteran rancher, was testifying in his capacity as a lay witness, not an expert. To require a party to qualify as an expert witness, and to be identified as such in discovery, in order to explain why his decision was not negligent, is to elevate form over substance. The trial court made the correct ruling in allowing his testimony.

### FAILURE TO TIMELY SUPPLEMENT WITH ADDRESS OF A FACT WITNESS

■ Straitway argues that the trial court erred in allowing the testimony of Mario Ontiveros, a cowboy who had worked for Mundorf, because Mundorf failed to timely supplement his responses to discovery with Ontiveros' correct address. Mundorf identified Ontiveros when he answered the interrogatories requesting identity of persons having knowledge of relevant facts, but gave his address as two towns, Poteet or Pearsall, Texas. Mundorf never supplemented this response, but called Ontiveros to testify at trial. When Straitway objected that the address had been incomplete, Mundorf responded that he did not learn of his correct address until the first day of trial as he had been unable to locate Ontiveros earlier than a few days before trial. He discovered that Ontiveros actually lived in Marfa, Texas.

After hearing Mundorf's explanation, the trial court found good cause for allowing Mundorf to call Ontiveros in that Mun-

dorf had relayed to Straitway the information concerning Ontiveros' whereabouts as soon as he had been located. The trial court offered to delay the trial to allow Straitway to depose Ontivaros prior to testifying. Straitway declined this offer, but stayed with his objection of failing to timely supplement the interrogatories and seeking the exclusion of the witness.

Discovery and the trial of this case was conducted prior to the 1999 rule changes, but the law at issue remains essentially the same. The "old" discovery rules required a party to supplement a request for discovery thirty days before trial when the party obtains information that his response was incorrect when made or it was correct and complete when made but new circumstances have made it no longer true and failure to amend the answer would make it misleading. Tex.R. Civ. P. 166b(6)(a) (Old rule). Rule 215(5) states that a party who fails to supplement a discovery response shall not be entitled to present evidence which the party was under a duty to provide in a response or to offer the testimony of any person having knowledge of relevant discoverable matter unless the trial court finds that good cause sufficient to require admission exists. Tex.R. Civ. P. 215.5 (Old rule). The rule further places the burden of establishing good cause on the party offering the evidence and states that good cause must be shown in the record. *Id. See E.F. Hutton v. Youngblood,* 741 S.W.2d 363 (Tex.1987).

■ This rule requiring the exclusion of witnesses when interrogatory responses have not been timely supplemented with the address of the witness has been strictly construed. *See Morrow v. H.E.B., Inc.,* 714 S.W.2d 297 (Tex.1986). *Durham Transp., Inc. v. Valero,* 897 S.W.2d 404, 416 (Tex.App.-Corpus Christi 1995, writ denied) (Failure to supplement a witness's address when it changes is grounds alone for exclusion.). The purpose of the rule is to prevent trial by ambush. *Alvarado v. Farah Mfg. Co., Inc.,* 830 S.W.2d 911, 914 (Tex.1992). The rule is mandatory. *Id.*

■ The determination of whether the offering party has met its burden of showing good cause to admit the testimony lies within the sound discretion of the trial court. *Alvarado,* 830 S.W.2d at 914. Its determination can be set aside only if it is determined that the court abused its discretion. *Morrow,* 714 S.W.2d at 297–98. "The good cause exception permits a trial court to excuse a failure to comply with discovery in difficult or impossible circumstances." *Id.; Clark,* 774 S.W.2d at 647 (inability to locate witness despite good faith efforts or inability to anticipate use of witness' testimony at trial might support a finding of good cause). The trial court has discretion to determine whether the offering party has met his burden of showing good cause to admit the testimony; but the trial court has no discretion to admit testimony excluded by the rule without a showing of good cause. *Morrow,* 714 S.W.2d at 297–98. The trial court's determination as to whether good cause has been shown will only be set aside on appeal if the trial court abuses its discretion. *Morrow,* 714 S.W.2d at 298.

■ The rule was strictly interpreted by the courts, and its application proved problematic. *Alvarado v. Farah Mfg. Co., Inc.,* 830 S.W.2d at 914; *Smith v. Southwest Feed Yards,* 835 S.W.2d 89, 93 (Tex. 1992) (Gonzales, J., concurring). The court has been loath to find "good cause sufficient to require admission" of the testimony of a witness not identified in response to discovery. *Alvarado,* 830 S.W.2d at 914. The rule is designed to promote full discovery and deter discovery abuse. *Clark v. Trailways, Inc.,* 774 S.W.2d 644, 646 (Tex.1989). The Supreme Court has stated, though, that

[T]his sanction was neither designed nor intended to punish a litigant who cannot, in the exercise of good faith and due diligence, respond to a discovery request in a timely manner. The good cause exception thus provides trial courts with the latitude to permit testimony in those

situations and excuse the party's failure to timely supplement the discovery request.

*Id.; Forman v. Fina Oil and Chemical Co.,* 858 S.W.2d 373, 374 (Tex.1993); *accord Campbell v. C.D. Payne and Geldermann Securities, Inc.,* 894 S.W.2d 411, 423 (Tex.App.—Amarillo 1995, writ denied). Exclusion is neither designed nor intended to punish a litigant who cannot, in the exercise of good faith and due diligence, respond to a discovery request in a timely manner. *Campbell,* 894 S.W.2d at 423.

We hold the trial court did not err. When Straitway objected to the testimony of Ontiveros, Mundorf made a showing on the record that he did not disclose this witness' address until trial because he did not know it, nor could he have known it from exercising reasonable diligence. The trial court explicitly found good cause for bringing the testimony of the witness. We are bound by the fact finder's ruling on this point. Moreover, we find this situation exactly the type that the exception to that rule was designed to allow. We are unpersuaded that the trial court abused its discretion in finding good cause existed to allow the testimony.

## NEGLIGENCE PER SE

■ Straitway complains that the trial court improperly instructed the jury regarding the standard for negligence when the case involves cattle on the roadway. The jury was given a standard negligence instruction which allowed for liability if Mundorf had not exercised reasonable care in allowing the cattle to wander onto the roadway. Straitway argues that the court should have instructed the jury that if Mundorf *knowingly* allowed the cattle to wander onto the road in violation of statute, he would be liable for negligence per se. *See* TEX. AGRIC. CODE § 143.102 (Vernon 1982). Initially, we note that it seems the wrong party is making this argument. If the jury found that Mundorf exercised reasonable care in keeping his cattle off the road, and they still got onto the road,

we see no way the jury could find that he "knowingly" let the cattle onto the road under the facts of this case. Straitway has presented no evidence that Mundorf knew the cattle were on the road at the time of the accident, much less that he knowingly allowed them to be there. We find this argument to have no merit, and overrule Straitway's point.

## SUFFICIENCY OF THE EVIDENCE

■ ˙ Finally, Straitway argues that the evidence was factually insufficient to support the jury's verdict. In reviewing a jury verdict to determine the factual sufficiency of the evidence, we consider and weigh all the evidence and set aside the judgment only if the evidence is factually so weak, or the verdict so contrary to the overwhelming weight of the evidence, as to make the judgment clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Pool,* 715 S.W.2d at 635. In reviewing whether the evidence is factually sufficient to support the verdict, we first examine all of the evidence. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). The verdict is set aside only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain,* 709 S.W.2d at 176.

The liability question submitted to the jury was simply, "Did the negligence, if any, of Dan Mundorf or his employees proximately cause the occurrence or injury in question?" "Negligence" was defined as "a failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances." Straitway argues that the fact that Mundorf did not use a cattle guard to keep the calves off the highway but rather used bailing wire, and that the calves being in the roadway caused the accident necessitates a finding of liability. We disagree. The burden is

on the plaintiff to prove negligence in enclosing the calves. The jury found that Mundorf exercised ordinary care in using the method of securing the gate that he did, even though it ultimately proved to be unsuccessful. We have carefully reviewed the evidence and do not find the verdict against the great weight and preponderance nor do we find it manifestly unjust. We overrule Straitway's point of error on factual sufficiency.

## JUDGMENT AS A MATTER OF LAW

Finally, Straitway argues that this court should extend the law to create a special standard of care for landowners who graze cattle adjacent to highways.

This accident occurred on Interstate 37, a 135 mile stretch of controlled access highway between San Antonio and Corpus Christi, Texas, that does not pass through or near any urban area until near its ends. Often, particularly at night, traffic is slight and the 65 mile per hour speed limit is observed as a minimum only, and the speed of traffic is usually greatly in excess of that legal maximum. With limited nighttime vision and traveling at high speed, a motorist is in mortal peril if he suddenly encounters cattle in his path. For the safety of the traveling public, livestock should be kept off all highways, especially those that have high speed traffic, such as interstate highways.

The keepers of the livestock have control of the potential for cattle to be roaming loose near highways. Given the hazard to the traveling public and the ability of only the keepers to control the animals, perhaps the standard of ordinary care is too lax under modern circumstances.

The proper forum for change is the legislature. It has enacted Agriculture Code section 143.102 that prohibits livestock owners from "knowingly" permitting their stock to roam on the highway. TEX. AGRIC. CODE ANN. § 143.102 (Vernon 1982). The Texas supreme court in *Beck v. Sheppard*, 566 S.W.2d 569, 572–73 (Tex.1978) declined to change the standard to presume negligence of a horse owner under statute and analyzed the standard of care under a "common-law" duty for the owner to act with due care to keep horse from escaping onto the highway. Judgments have been upheld in many cases for plaintiffs who have been injured by livestock on highways, when the standard is ordinary care. *See, e.g. Weaver v. Brink*, 613 S.W.2d 581, 583–84 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.) (finding defendant negligent who knowingly maintained cattle behind fences unable to withstand rainfalls and who "knew or should have known" that the cattle had been loose several times at or near the highway); *Warren v. Davis*, 539 S.W.2d 907, 910 (Tex.Civ.App.—Corpus Christi 1976, no writ) (livestock owner who allowed bull to escape through an unlocked gate liable to a driver on a farm-to-market road for "common-law negligence"); *Hanna v. Wright*, 504 S.W.2d 779, 782–83 (Tex. Civ.App.—Tyler 1974, no writ) (finding defendant could be liable to a driver on a public road for negligently failing to maintain all gates in place in an area that had adopted a local stock law); *Weddle v. Hudgins*, 470 S.W.2d 218, 219 (Tex.Civ.App.— Tyler 1971, writ ref'd n.r.e.) (finding "a statutory basis" for civil liability for "knowingly" allowing cattle to roam at large on a farm-to-market road where a local stock law was in place); *see also Gibbs v. Jackson*, 990 S.W.2d 745, 749 (Tex.1999) (noting that Texas courts have held stock keepers liable under general standards of negligence).

Any change in the standard of care for the keepers of livestock is a legislative decision, and not for an intermediate appellate court.

We overrule Straitway's final point of error, and AFFIRM the judgment of the trial court.