# NO. 12-13-00024-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DONALD CARNEY, M.D. AND LAKELAND MEDICAL ASSOCIATES AND WILLIAM CONNER, M.D. AND TYLER INPATIENT MANAGEMENT SPECIALISTS, P.A., APPELLANTS* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *BETTY HOLDER, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JOE HOLDER, APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Donald Carney, M.D., Lakeland Medical Associates, William Conner, M.D., and Tyler Inpatient Management Specialists, P.A. (Appellants) appeal the trial court's orders overruling their objections to the expert report and denying their motion to dismiss. They raise one issue on appeal. We reverse and remand.

## BACKGROUND

Betty Holder filed suit against Appellants for medical negligence, and timely tendered the expert report of Dr. Rhett Fredric. Appellants objected to the report, alleging that it failed to satisfy the expert report requirements of Texas Civil Practice and Remedies Code Section 74.351, and moved to dismiss the suit.

In the report, Dr. Fredric stated that Joseph Holder, Betty's husband, presented to Dr. Carney at Lakeland Medical Associates on July 28, 2010, with low back pain that began approximately two weeks prior to the visit. Joseph weighed 228 pounds at the time. Dr. Carney

ordered radiographic imaging, an MRI, various lab tests, and prescribed "Lortab" to Joseph for his pain symptoms. Joseph's lab tests showed "an elevated sed rate of 30 (normal is 0-15), elevated BUN at 27[,] and also elevated creatinine and calcium levels."

Joseph's pain worsened and he returned to Lakeland on August 2, 2010, with complaints of increased back pain and fever. Joseph weighed 217 pounds on the date of this visit, representing a loss of eleven pounds since his visit just five days earlier. Further lab tests were conducted that showed an "elevated sed rate at 88, elevated BUN at 46, elevated creatinine at 1.91, and an elevated B/C ratio of 24.1, as well as again, an elevated calcium level."

On August 4, 2010, Joseph was admitted to Trinity Mother Frances Hospital under the care of Dr. Conner. While at the hospital, Joseph experienced low white blood cell and platelet counts, as well as elevated BUN, carbon dioxide, and calcium levels. Dr. Conner documented suspicions of cancer and metastatic disease and ordered a bone scan.[1] The scan was read as being negative for metastatic lesions.[2] Joseph was discharged on August 10, 2010, with diagnoses of "acute low back pain, pancreatic lesion, acute renal sufficiency, hypercalcemia, and hypertension."

On August 16, 2010, Joseph returned to Lakeland and saw Dr. Carney for increased back pain. Dr. Carney diagnosed Joseph with low back pain and gout, and prescribed steroids. On August 20, 2010, at a follow up visit, Dr. Carney again diagnosed Joseph with gout.

On August 26, 2010, Dr. Carney ordered a basic metabolic panel, which showed abnormal results for "BUN, creatinine, B/C ratio, eGFR, chloride, carbon dioxide, anion gap, and calcium levels." On September 9, 2010, Joseph saw Dr. Carney again and he weighed 185 pounds, which reflects a forty-three pound weight loss from his initial visit on July 28, 2010. Lab tests from this visit showed abnormal results for platelets and white blood cell count, and an elevated calcium

---

[1] Dr. Conner also documented a suspicion of pancreatic malignancy during this hospitalization and requested a gastrointestinal consult with Dr. Don Freeman and Digestive Health Specialists of Tyler, LLP. Betty sued Dr. Freeman and Digestive Health Specialists as well. However, the trial court sustained their objections to Dr. Fredric's report and dismissed them from the suit. They are not parties to this appeal.

[2] Dr. Bruce Carter was the radiologist who interpreted the bone scan. Betty sued him and Tyler Radiology Associates, but they were dismissed from the suit and are not part of this appeal. Other than an entry in the docket sheet that there was an "agreed judgment" involving these parties issued the same day as the other orders were signed, the reason for this disposition is not clear in the record.

level.[3] Dr. Carney referred Joseph to a chronic pain specialist, and ordered Joseph to follow up in one week.

On September 15, 2010, Joseph was admitted to East Texas Medical Center (ETMC) with a diagnosis of small cell lung carcinoma. Joseph's oncologist noted a large mass on his upper right lung lobe, and found that the August 4, 2010 bone scan was positive for metastatic disease. The oncologist also documented that Joseph was symptomatic of cancer due to his significant weight loss and elevated levels of calcium. Joseph began cancer treatment, but died on September 22, 2010.

The report alleges that Appellants were negligent by failing to recognize cancer symptoms and refer Joseph to an oncologist, resulting in an untimely diagnosis of cancer. However, Dr. Fredric does not allege in the report that Joseph would have survived had he been timely diagnosed. Rather, Dr. Fredric states that the untimely diagnosis resulted in unnecessary pain and suffering, which forms the basis of Betty's claim. The trial court overruled Appellants' objections and denied their motions to dismiss. This interlocutory appeal followed.

<u>**JURISDICTION**</u>

As a preliminary matter, Betty contends that this court does not have subject matter jurisdiction over this interlocutory appeal because Appellants failed to timely perfect their appeal.

**Standard of Review and Applicable Law**

A party may appeal from the trial court's interlocutory order that denies all or part of the relief sought by a motion to dismiss for failure to serve an adequate medical expert report under Section 74.351(b). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2014). The appeal is accelerated. TEX. R. APP. P. 28.1(a). In an accelerated appeal, the notice of appeal must be filed within twenty days after the judgment or order is signed. TEX. R. APP. P. 26.1(b).

The trial court clerk must immediately send written notice to the parties by first class mail that the trial court signed an appealable order. TEX. R. CIV. P. 306a(3). If the party adversely affected by the order (1) does not receive the clerk's notice within twenty days after the order is signed, (2) has not acquired actual knowledge of the order within that twenty day period, (3) but obtains the written notice or actual knowledge of the order's signing within ninety days, the trial

---

[3] Dr. Carney did not review these results until October 4, 2010, after Joseph died. His staff did not provide him with the results until then. According to Dr. Fredric's report, since Joseph began receiving the appropriate treatment at East Texas Medical Center on September 15, 2010, the delay is relevant only for the six day period that Joseph suffered unnecessary pain (from the lab test date to the date of his admission at ETMC).

3

court may reset the date on which the time to perfect the appeal begins. *See* TEX. R. CIV. P. 306a(4). The trial court should reset the date to the day that the adversely affected party received the notice or obtained actual knowledge of the order's signing. *See id.*

Rule 306a(4)'s extension is not automatic, but instead requires the adversely affected party to (1) file a sworn motion and notice, (2) prove the date on which he or his attorney first received notice or acquired actual knowledge of the order, and (3) prove that date was more than twenty days, but within ninety days, of the order's signing. *See* TEX. R. APP. P. 4.2(b); TEX. R. CIV. P. 306a(5); ***Moore Landrey, L.L.P. v. Hirsch & Westheimer, P.C.***, 126 S.W.3d 536, 540 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Furthermore, the trial court must sign a written order finding the date on which the party or its attorney received notice or acquired actual knowledge. TEX. R. APP. P. 4.2(c). Compliance with Rule 306a(5)'s requirements is jurisdictional. *See* ***Mem'l Hosp. of Galveston Cnty. v. Gillis***, 741 S.W.2d 364, 365 (Tex. 1987). This procedure to extend the deadline to file a notice of appeal applies to accelerated interlocutory appeals. *See* ***PER Group, L.P. v. Dava Oncology, L.P.***, 294 S.W.3d 378, 383 (Tex. App.—Dallas 2009, no pet.).

We review the trial court's decision concerning the date a party received actual knowledge of the order's signing under the traditional legal and factual sufficiency of the evidence standard of review. ***Texaco, Inc. v. Phan***, 137 S.W.3d 763, 767-68 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

## Discussion

Betty contends that the trial court erred when it granted Appellants' motion to extend the appellate deadlines under Rule 306a. She does not dispute the facts established at the hearing on the motion. Instead, she contends that Appellants and their counsel had a duty to inquire about the date the trial court signed the orders denying their objections and motions to dismiss, and failed to properly discharge this duty.

On October 29, 2012, after the hearing on Appellants' motions to dismiss, the trial court informed the parties in writing that it would overrule Appellants' objections and motions to dismiss without signing any official order. However, the parties believed that the orders would not be signed until after the expiration of the original 120 day period to file the expert report.[4] The

---

[4] The parties wished to avoid a possible appellate issue. They believed Betty theoretically could have amended her report within the original 120 day period in the event the trial court found the report insufficient prior to

4

120 day deadline expired on December 17, 2012, but on November 16, 2012, the trial court signed the orders denying Appellants' objections and motions to dismiss, as well as the orders dismissing the other defendants from the suit. The clerk never provided the Rule 306a(3) notice, and the parties remained unaware that the trial court had signed the orders.[5] Appellants learned that the other defendants had been dismissed from the suit on December 6, 2012, but never received written notice that the trial court was overruling their objections.

On January 2, 2013, when Dr. Carney and Lakeland Medical's counsel returned from the holidays, he called Betty's counsel, stating that he had not received a copy of the signed orders. Betty's lawyer replied that he had not received the orders, and stated that he would call the trial court clerk. As a result of his call to the court clerk, Betty's lawyer discovered that the orders had been signed, and he notified the other parties that day.

Appellants filed a motion to extend the appellate timetable under Rule 306a(5). At the hearing, Appellants' lawyers testified to their understanding about delaying the signature of the orders until after December 17, 2012, and established that they did not obtain the clerk's written notice or actual knowledge that the orders had been signed until January 2, 2013. Betty's counsel did not disagree with the facts, but argued that Appellants' lawyers had a duty to inquire of the court concerning when it signed the orders, and that they failed to discharge their duty. *See **In re Rhodes***, 293 S.W.3d 342, 344 (Tex. App.—Fort Worth 2009, no pet.); ***Welborn Mort. Corp. v. Knowles***, 851 S.W.2d 328, 331 (Tex. App.–Dallas 1993, writ denied).

In ***Rhodes***, the party aggrieved by the judgment contacted the court clerk and learned that an order had been signed. *See **In re Rhodes***, 293 S.W.3d at 344. He acquired this knowledge within twenty days after the order was signed. *Id.* However, he waited to receive the actual written copy of the notice of judgment, and later claimed the date he received the written notice extended the deadline to file a motion for new trial under Rule 306a. *Id.* But his affidavit conclusively showed that, when he called the court clerk, he acquired actual notice that an order had been signed prior to the twenty day period. *Id.* Consequently, he could not avail himself of

---

the expiration of the 120 day deadline. Therefore, Appellants wanted to avoid raising the issue of whether the trial court had the authority to rule on the motion within the 120 day period.

[5] The record is unclear as to whether the court was informed of the parties' understanding. Appellants' counsel discussed the issue with Betty's counsel. From this discussion, Appellants' counsel believed that Betty's counsel, as the prevailing party drafting the proposed orders, would inform the court that it would be best to delay signing the orders until after December 17, 2012. Betty's counsel agreed with this understanding, but never stated whether he informed the court of the agreement.

the Rule 306a extension. *Id.* The court rejected the argument that he did not have notice of the order until he received it and became aware of its contents. *Id.* *Rhodes* is distinguishable from the present case because Appellants did not obtain the clerk's notice or obtain actual knowledge of the orders' signing until January 2, 2013, a date more than twenty days after their signing.

In *Knowles*, after prevailing on their claims in a jury trial, the plaintiffs' counsel moved for judgment on the jury verdict. *Knowles*, 851 S.W.2d at 329-30. Counsel attached a cover letter to the proposed judgment, in which he asked that the court sign and enter the proposed judgment. *Id.* at 330. However, counsel hand delivered the cover letter and proposed judgment to the court, and the trial court signed the proposed judgment that day. *Id.* The court clerk never sent the defendant or his counsel the 306a written notice of judgment. *Id.* The plaintiffs' counsel forwarded the cover letter and a copy of the signed judgment to defense counsel. *Id.* The defendant's counsel read only the cover letter requesting that the trial court sign the attached proposed judgment, but did not actually read the judgment itself to learn that it had been signed. *Id.* The defendant later sought to extend the postjudgment deadlines under Rule 306a, claiming that he did not receive notice until later when the plaintiffs' counsel sent a letter stating that the judgment was final. *Id.* The Dallas court of appeals stated that "[t]he law charges one who has knowledge of facts that would cause a prudent man to inquire further with notice of the facts that, by use of ordinary intelligence, he would have learned." *Id.* at 331. A divided court held that, since defense counsel negligently failed to read the judgment, he had implied actual notice that it had been signed. *See id.* at 332. Therefore, the defendant could not avail itself of the Rule 306a extension, and the court lacked jurisdiction to hear the appeal. *See id.*

At least one court has distinguished *Knowles*, holding that the application of the ruling in *Knowles* is limited to its facts. *See Straitway Transp., Inc. v. Mundorf*, 6 S.W.3d 734, 737 (Tex. App.—Corpus Christi 1999, pet. denied). In *Mundorf*, the defendant prevailed at trial, and drafted the proposed judgment, sending a copy to the court and the plaintiffs on November 21, 1997. *Id.* The trial court signed the judgment on December 5, 1997. *Id.* The defendant obtained notice of the judgment from the court on December 19, 1997. *Id.* at 736. The plaintiffs did not receive notice until January 6, 1998. *Id.* The court of appeals distinguished *Knowles*, holding that it applies only in situations where an attorney has admitted to actual physical receipt of the signed judgment but argues that he lacked knowledge of the judgment. *Id.* at 737. In *Mundorf*, counsel received only a copy of the proposed unsigned judgment, and made no further inquiry of

the court, its clerk, or opposing counsel. *Id*. The court noted that the language of Rule 306a was clear on its face. *Id*. The appellate court held that *Knowles* was inapplicable because the plaintiffs did not receive the clerk's notice or actual knowledge of the judgment's signing until more than twenty days but less than ninety days after it was signed. As a result, the trial court should have extended the deadlines. *Id*.

The facts in the instant case are more akin to *Mundorf*, and we agree that *Knowles* does not apply to these facts. The complaining party in *Knowles* possessed a signed copy of the judgment. In this case, Appellants did not have any notice of the judgment until January 2, 2013. The fact that Appellants knew of an unsigned proposed judgment and that other defendants had been dismissed does not mean they acquired actual knowledge that a judgment against them had been signed. Moreover, even if they had a duty to inquire under these facts, the trial court could have found that the inquiries of Appellants' counsel to Betty's counsel, who was the prevailing party drafting the proposed judgment, reasonably satisfied that duty.

We conclude that the trial court properly found that Appellants acquired actual knowledge the orders were signed on January 2, 2013. Since the notices of appeal were filed within twenty days of that date (January 18, 2013), this court has jurisdiction over this appeal.

## EXPERT REPORT

In their sole issue, Appellants contend that the trial court abused its discretion when it overruled their motion to dismiss Holder's suit for failure to comply with the expert report requirements on causation under Chapter 74.

### Standard of Review

We review a trial court's Section 74.351 ruling for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). A trial court acts arbitrarily and unreasonably if it could have reached only one decision, but instead reached a different one. *See Teixeira v. Hall*, 107 S.W.3d 805, 807 (Tex. App.—Texarkana 2003, no pet.). To that end, a trial court abuses its discretion when it fails to analyze or apply the law correctly. *In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007) (citing *In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003)). We may not substitute our judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

7

**Applicable Law**

An "expert report" is a written report that provides a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the defendant failed to meet those standards, and the causal relationship between the defendant's failure and the plaintiff's injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.35l(r)(6) (West Supp. 2014). In setting out the expert's opinions on each of the required elements, the report must provide enough information to fulfill two purposes if it is to constitute a good faith effort. *Palacios*, 46 S.W.3d at 879. An objective good faith effort to comply with the statute is made if the report (1) informs the defendant of the specific conduct that the plaintiff has called into question and (2) allows the trial court to conclude that the claim has merit. *Id.* at 879. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not provide the necessary information to fulfill the dual purposes. *Id.* Rather, the expert must explain the basis of his statements to link his conclusions to the facts. *Bowie Mental Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). In our review of an expert report, we are limited to the report's contents, contained within the four corners of the report, in determining whether the report manifests a good faith effort to comply with the statutory definition of an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*); *Palacios*, 46 S.W.3d at 878.

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent this act or omission, the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.). Merely providing some insight into the plaintiff's claims does not adequately address causation. *Wright*, 79 S.W.3d at 53. Accordingly, causation cannot be inferred; it must be clearly stated. *Castillo v. August*, 248 S.W.3d 874, 883 (Tex. App.—El Paso 2008, no pet.). Indeed, we may not fill in gaps in a report by drawing inferences or guessing what the expert meant or intended. *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.).

However, a plaintiff need not present evidence in the report as if it were actually litigating the merits. *Palacios*, 46 S.W.3d at 879. The report can be informal, meaning that it does not have to meet the same requirements as the evidence offered in a summary judgment proceeding or at trial. *Id.*

**Adequacy of Dr. Fredric's Causation Opinion—Dr. Carney and Dr. Conner**

Dr. Fredric's opinion on causation is that had either Dr. Carney or Dr. Conner timely diagnosed Joseph with cancer or referred him to an oncologist, Joseph would have obtained the "appropriate pain treatment." Consequently, his report continues, Joseph would have foregone unnecessary pain and suffering due to the delay.

Dr. Carney took steps to alleviate Joseph's pain by prescribing at least one pain medication—Lortab.[6] Dr. Carney also referred Joseph to a chronic pain specialist. Two days after the second visit with Dr. Carney, Joseph was admitted to Trinity Mother Frances Hospital for several days under Dr. Conner's care. Dr. Conner suspected cancer, and took steps to determine whether Joseph had cancer by ordering a bone scan and referred Joseph for diagnostic radiological studies. The physicians conducting those tests concluded there was no evidence of metastatic lesion, and there was "no definite scintigraphic evidence of osseous metastatic disease or active lytic or blastic lesion."

Dr. Fredric's support for causation is that, according to his report, cancer pain medications are different than gout pain medications, back pain medications, and medications for chronic pain. However, he does not identify the medications that should have been prescribed, explain how they are different than other pain medications, describe how those medications would be more effective in eliminating Joseph's pain, or explain how an oncologist would be more qualified to provide the correct prescriptions than either individual defendant or the chronic pain specialist. This information is critical, especially since the category of damages Betty seeks arises from Joseph's pain and suffering, and Joseph had already been prescribed at least one pain medication. Consequently, Dr. Fredric's statements on causation are conclusory, lack sufficient detail, and require us to make inferences to conclude the claim has merit. Without that information, we cannot conclude that the claim is meritorious.

Betty claims that even if the negligent diagnosis claim is insufficient, the negligent referral claim against both individual defendants is sufficiently alleged, and consequently, the entire case should proceed. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 632 (Tex. 2013) (holding report that meets Section 74.351 requirements, even if as to only one theory of liability, entitles claimant to proceed with suit against physician or other health care provider). Betty also contends

---

[6] During his treatment, Appellants allege that Joseph was prescribed numerous pain medications, including Lortab, Toradol, Hydrocodone, Norco, Percocet, Morphine, and Tramadol. However, other than Lortab, Dr. Fredric did not mention any of these pain medications in his report. Since our analysis is limited to information contained within the four corners of the report, we consider only that Joseph was prescribed Lortab for pain.

she was not required to marshal all her proof and that Dr. Fredric need not rule out every possible cause or rebut all possible defensive theories, at least for purposes of satisfying the expert report requirement in a healthcare liability claim. *See, e.g., Hillery v. Kyle*, 371 S.W.3d 482, 492 (Tex. App.—Houston [1st Dist.] 2012, no pet.). While Dr. Fredric may not have been required to rule out all possible causes or rebut all possible defensive theories, he must establish in his report some causal connection between Appellants' conduct and the harm Joseph suffered. The statements concerning causation cannot be inferred, speculative, or conclusory. *See Wright*, 79 S.W.3d at 53; *Castillo*, 248 S.W.3d at 883; *Webb*, 228 S.W.3d at 279. Moreover, the conclusion must link to the facts. *See Wright*, 79 S.W.3d at 52. Dr. Fredric's report fails in this regard. Irrespective of whether either doctor would have timely diagnosed Joseph's cancer or referred him to an oncologist, the report does not identify the course of treatment that Appellants or an oncologist should have provided, and he does not explain how that treatment would have led to a different outcome—eliminating Joseph's "unnecessary pain and suffering." *See Hardy v. Marsh*, 170 S.W.3d 865, 870 (Tex. App.—Texarkana 2005, no pet.) (holding failure to consult with specialist surgeon without explaining connection between consultation and outcome, or discussion as to what additional procedures or treatment would have been provided by surgeon was inadequate as to causation under Chapter 74). Consequently, Betty failed to establish that Appellants' failure to timely diagnose Joseph's condition, refer him to an oncologist, or provide "appropriate pain treatment" caused Joseph to undergo unnecessary pain and suffering.

## Adequacy of Dr. Fredric's Causation Opinion—Lakeland Medical Associates and Tyler Inpatient Management Specialists

Betty argues that staff at Lakeland Medical Associates failed to "immediately notify Dr. Carney of the critical lab results" from the lab tests conducted on September 9, 2010. Because he started receiving the "appropriate treatment" on September 15, 2010, her argument continues, this delay caused six days of unnecessary pain and suffering. Again, Dr. Fredric does not offer any explanation of what the "adequate treatment" would have entailed, or how this treatment would have differed from the pain medication that Joseph had been receiving. Consequently, we have only the unsupported conclusion that such treatment would have resulted in six fewer days of unnecessary pain had these critical lab results been immediately communicated to Dr. Carney.

As for Tyler Inpatient Management Specialists, Dr. Fredric's report is devoid of any allegation that it breached an independent duty, or caused any harm to Joseph to support a direct

liability claim. *See **RGV Healthcare Assocs., Inc. v. Estevis***, 294 S.W.3d 264, 269 (Tex. App.—Corpus Christi 2009, pet. denied) (holding direct liability claims against healthcare provider facility should have been dismissed from suit when report implicated only conduct of facility's employees and did not establish basis for direct liability claims).

To the extent that the claims against Tyler Inpatient Management Specialists and Lakeland Medical Associates are vicarious in nature based on the employment or agency status of Dr. Conner and Dr. Carney, a report that adequately implicates the actions of Dr. Conner and Dr. Carney is sufficient. *See **Gardner v. U.S. Imaging, Inc.***, 274 S.W.3d 669, 671-72 (Tex. 2008) (per curiam). As we have stated, the report fails to establish causation against either Dr. Conner or Dr. Carney. Consequently, Tyler Inpatient Management Specialists' and Lakeland Medical Associates' objections should have been sustained.

Appellants' sole issue is sustained.

## DISPOSITION

Having sustained Appellants' sole issue, we ***reverse*** the trial court's order overruling Appellants' objections and denying Appellants' motions to dismiss, and ***remand*** for a determination of whether Betty should be afforded the opportunity to amend her expert report to satisfy Section 74.351.[7] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); ***Leland v. Brandal***, 257 S.W.3d 204, 207–08 (Tex. 2008); ***Tenet Hosps. Ltd. v. Love***, 347 S.W.3d 743, 757 (Tex. App.—El Paso 2011, no pet.) (noting that trial court is in best position to grant thirty day extension after court of appeals reverses and remands trial court's order denying dismissal of claim for failure to comply with expert report requirements).

JAMES T. WORTHEN
Chief Justice

Opinion delivered August 13, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[7] We note that the trial court should err on the side of granting the additional time and must grant it if the deficiencies are curable. *See **Scoresby v. Santillan***, 346 S.W.3d 546, 549 (Tex. 2011).



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 13, 2014**

**NO. 12-13-00024-CV**

**DONALD CARNEY, M.D. AND LAKELAND MEDICAL
ASSOCIATES AND WILLIAM CONNER, M.D. AND
TYLER INPATIENT MANAGEMENT SPECIALISTS, P.A.,**
Appellants
V.
**BETTY HOLDER, INDIVIDUALLY AND AS
EXECUTRIX OF THE ESTATE OF JOE HOLDER,**
Appellee

---

Appeal from the 392nd District Court

of Henderson County, Texas (Tr.Ct.No. 2012B-0860)

---

    THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the order of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the trial court's order overruling Appellants' objections and denying Appellants' motions to dismiss be **reversed** and the cause **remanded** to the trial court **for further proceedings** for a determination of whether Betty Holder should be afforded the opportunity to amend her expert report to satisfy Section 74.351 of the Texas Civil Practice and Remedies Code and that all costs of this appeal are hereby adjudged one-half against the Appellants, **DONALD CARNEY, M.D. AND LAKELAND MEDICAL ASSOCIATES AND WILLIAM CONNER, M.D. AND TYLER INPATIENT MANAGEMENT SPECIALISTS, P.A.,** and one-half against the Appellee, **BETTY HOLDER**, in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

      James T. Worthen, Chief Justice.
      *Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*