# Supreme Court of Texas

========

No. 20-0293

========

City of San Antonio,
*Petitioner*,

v.

Armando D. Riojas,
*Respondent*

════════════

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

════════════

**Argued September 28, 2021**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

This case and a companion case also decided today, *City of San Antonio v. Maspero*,[1] involve a city's immunity from suit under the Texas Tort Claims Act[2] for injuries arising from the use of law-enforcement vehicles. Here, the court of appeals held that the City is not immune, applying a need–risk balancing analysis that we have

---

[1] ___ S.W.3d ___ (Tex. 2022) (No. 19-1144).

[2] TEX. CIV. PRAC. & REM. CODE §§ 101.001-101.109.

expressly refused to apply outside the context of a high-speed chase or other emergency law-enforcement response that carries an inherent risk of harm to the public.[3] In this case involving routine traffic management, the City need show only that its officer acted in good faith—that is, "that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred."[4] The City made that showing. Accordingly, we reverse the judgment of the court of appeals and dismiss Riojas' claims against the City for lack of jurisdiction.

## I

## A

Mid-afternoon on a clear day, San Antonio Police Officer Vincent Tristan was driving his patrol car southbound on Interstate 37. That stretch of highway has three main lanes and an additional exit lane on the right. Officer Tristan was in the exit lane preparing to take the Pecan Valley Drive exit when he observed a sudden traffic slowdown ahead. He slowed, and to warn motorists behind him, activated his emergency lights.

Officer Tristan's dash camera recorded a white sedan suddenly

---

[3] 604 S.W.3d 432, 446 (Tex. App.—San Antonio 2020); *cf. Telthorster v. Tennell*, 92 S.W.3d 457, 459 (Tex. 2002) ("Here, we must decide whether the *Wadewitz* particularized need/risk assessment is required when a suspect sues for injuries sustained during an arrest. We conclude that it is not, because the public-safety concerns underlying that assessment are not implicated.").

[4] *Telthorster*, 92 S.W.3d at 465 (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656-657 (Tex. 1994)).

moving from the center lane to the right-most through lane, directly in front of two other vehicles. The white sedan then slowed dramatically just past the entrance to the exit ramp, forcing the other two vehicles to slow, as shown by their illuminated brake lights. At the same time, an SUV moved from the left-most lane across two lanes of traffic to the right-most lane, just in front of the white sedan. The sedan made a hard right turn and cut across two solid white lines and the shoulder to exit the highway. The other cars continued forward, slowly regaining normal speed. Officer Tristan then pulled onto the shoulder and radioed another officer to stop the sedan for making an improper lane change.

While these events were occurring, Armando Riojas was riding his motorcycle behind Officer Tristan's vehicle but three lanes over in the left-most lane, directly behind a car driven by Klaryssa Vela. When the car in front of her slowed, Vela braked in response. Riojas swerved to avoid a collision but lost control of his motorcycle and fell to the ground while his bike slid into Vela's car. Because the accident occurred behind Officer Tristan, there is no recording of it. Vela stopped to help, as did two other witnesses. The driver of the car in front of Vela did not stop and was never identified.

Officer Tristan moved his patrol car to the accident site and called for help. As he exited the car, the dash camera audio captured witnesses accusing him of causing the wreck. "I hate to say this, bro", said one, "but it was your fault. . . . You scared everybody on the street by turning your lights on for no reason". "No, no, no", Officer Tristan responded, "that white car stopped in the middle of the freeway". "I'm just saying", one witness continued, "whatever y'all did scared that lady. She hit the

brakes, ok, and then this guy hit it. I'm not saying you didn't have the right to do what you did, I'm just saying what you did caused this". Officer Tristan summarized the exchange in his crash report, though the witnesses were never identified by name.

After the exchange, Officer Tristan asked Vela what had happened, and she responded that she had braked because the car in front of her did. Riojas refused medical care at the scene and later, in his deposition, denied seeing Tristan's emergency lights before the accident occurred.

**B**

Riojas sued the City, alleging that Officer Tristan was negligent in turning on his emergency lights.[5] Political subdivisions of the State are immune from suits for damages unless their immunity is waived by the Legislature.[6] Section 101.021(1) of the Tort Claims Act makes a governmental unit liable for personal injury, proximately caused by an employee's negligence, that "arises from the operation or use of a motor-driven vehicle", if the employee would be personally liable under Texas law.[7]

The City filed a plea to the jurisdiction arguing that its immunity

---

[5] Riojas also sued the driver and the owner of the white sedan. They are not parties to this appeal.

[6] *See, e.g.*, *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 746 (Tex. 2019).

[7] TEX. CIV. PRAC. & REM. CODE § 101.021(1). In another section, the Act clarifies that "[s]overeign immunity to suit is waived and abolished to the extent of liability created" by the Act, *id.* § 101.025(a), and that "[a] person having a claim" under the Act "may sue a governmental unit for damages allowed by" the Act, *id.* § 101.025(b).

4

from suit was not waived because Riojas' injuries were caused by other drivers' actions, not Officer Tristan's, and because Officer Tristan is entitled to official immunity and therefore cannot be personally liable to Riojas. Because the City challenged the existence of these jurisdictional facts—as opposed to whether Riojas had adequately pleaded them—its plea is treated as a motion for summary judgment.[8] The trial court denied the City's plea, and the court of appeals affirmed.[9]

The court divided on the issue of causation, but it was unanimous in holding that the City failed to prove that Officer Tristan is entitled to official immunity.[10] The court reasoned that to satisfy the good-faith prong of the official-immunity test, the City was required to show that before activating his emergency lights, Officer Tristan "balanced the need he perceived [to do so] with the potential risk posed by his chosen

---

[8] We recently explained that

> to prevail on a claim of immunity, the governmental defendant may challenge whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case, the existence of those very jurisdictional facts, or both. Where the defendant challenges the existence of jurisdictional facts, as TxDOT did here in its motion to dismiss, the court must move beyond the pleadings and consider evidence. The analysis then mirrors that of a traditional summary judgment.

*Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (cleaned up) (quoting *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012)).

[9] 604 S.W.3d 432, 437 (Tex. App.—San Antonio 2020).

[10] *Id.* at 446.

course of action."[11] It cited for that test our caselaw involving high-speed chases and other emergency-response situations.[12]

The City petitioned for review of both the court of appeals' conclusions that it failed to negate proximate cause or show official immunity. Although the evidence of causation is slim, and the court of appeals' opinion could be read to indicate, incorrectly, that Section 101.021(1) does not require a showing of proximate cause to establish a waiver of sovereign immunity,[13] we address only the City's argument on official immunity.

## II

"If [an] employee is protected from liability by official immunity, the employee is not personally liable to the claimant and the government

---

[11] *Id.*

[12] *See id.* at 445-446 (citing *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640 (Tex. 2015) (police pursuit of a reckless driver); *Univ. of Hous. v. Clark*, 38 S.W.3d 578 (Tex. 2000) (police pursuit of a criminal suspect); *Wadewitz v. Montgomery*, 951 S.W.2d 464 (Tex. 1997) (police response to emergency call involving a theft-in-progress)).

[13] The City argued that Officer Tristan's conduct was too attenuated from the wreck to have caused it. The court's response rejecting that argument points to language in our prior decisions characterizing the "arises from" requirement in Section 101.021(1)(A) as something less than proximate cause. *See id.* at 444 (citing *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 302 (Tex. 2019)); *see also Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 928-929 (Tex. 2015) (describing the "arises from" requirement as "something more than actual cause but less than proximate cause").

But the text of Section 101.021(1) requires a plaintiff to show both that the property damage, personal injury, or death arose from motor-vehicle use (see subsection (1)(A)) and that the damage, injury, or death was proximately caused by the employee's negligence (see subsection (1)). These are separate and independent requirements. Satisfying the "arises from" requirement does not excuse a plaintiff from demonstrating proximate cause.

6

retains its sovereign immunity under [Section 101.021(1)]."[14] The City argues that Officer Tristan's decision to activate his emergency lights was protected by official immunity.

Official immunity is an affirmative defense[15] that "inures to all governmental employees who perform discretionary functions in good faith and within their authority."[16] Riojas concedes that by turning on his lights, Officer Tristan was performing a discretionary function within the scope of his employment. Riojas contends, however, that the City has not proven conclusively that Officer Tristan was acting in good faith. The court of appeals agreed because it concluded that under our decision in *Wadewitz v. Montgomery*, a police officer claiming official immunity must show that he analyzed both the need for action and the potential risks of taking it before engaging in even routine law-enforcement behavior, and Officer Tristan's affidavit fails to demonstrate that analysis.[17] At oral argument, Riojas' counsel acknowledged that the court of appeals' opinion amounts to an "aggressive expansion" of our good-faith jurisprudence.

## A

The need–risk analysis that the court of appeals employed

---

[14] *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995) (citing *K.D.F. v. Rex*, 878 S.W.2d 589, 597 (Tex. 1994); *City of Houston v. Kilburn*, 849 S.W.2d 810, 812 (Tex. 1993)).

[15] *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).

[16] *DeWitt*, 904 S.W.2d at 652 (citing *Chambers*, 883 S.W.2d at 653).

[17] 604 S.W.3d at 445-446.

originates in our 1994 decision *City of Lancaster v. Chambers*.[18] There, Chambers was riding on the back of a motorcycle driven by Stiles, who ran a red light in view of a police officer. The officer activated his emergency lights, Stiles sped away, and a high-speed chase involving police vehicles from several jurisdictions ensued. When Stiles tried to exit the highway at a high rate of speed, the motorcycle crashed into a pole at a gas station, killing Stiles and injuring Chambers. Chambers sued the cities of DeSoto and Lancaster, alleging that the negligence of their police-officer employees caused his injuries. The trial court granted a take-nothing summary judgment for the cities, but the court of appeals reversed. After concluding that a police officer's engaging in a high-speed chase is a discretionary act, we turned to an examination of the good-faith element and acknowledged that courts have had difficulty applying it.[19]

> We held that "an officer acts in good faith *in a pursuit case* if:"
>
> a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit.[20]

We explained that the test "is derived substantially from the test that has emerged under federal immunity law for claims of qualified immunity in [42 U.S.C.] § 1983 cases".[21] And we quoted federal caselaw

---

[18] 883 S.W.2d 650.

[19] *Id.* at 655.

[20] *Id.* at 656 (emphasis added).

[21] *Id.*

8

for the propositions that "the test is one of objective legal reasonableness"—not a question of whether the official "acted with subjective good faith"—and that it "protects all but the plainly incompetent or those who knowingly violate the law."[22] Because we had "articulat[ed] . . . a new legal standard by which good faith as a component of official immunity must be judged," we remanded the case to the trial court for further proceedings rather than evaluate the summary-judgment evidence under the new standard ourselves.[23]

Three years later we decided another emergency-response case, *Wadewitz v. Montgomery*,[24] on which the court of appeals relied here. While investigating a burglary at an insurance office, Officer Wadewitz was dispatched to assist another officer with a theft in progress. Wadewitz exited the insurance office onto the outer westbound lane of North Valley Mills Drive with his siren, lights, and air horn all activated. But he needed to go east. A large truck had stopped in the middle westbound lane, blocking Wadewitz's view of the inside westbound lane. As Wadewitz crossed the westbound lanes to enter the turn lane, his car collided with Montgomery's car in the innermost lane. Montgomery sued Wadewitz and the City of Waco. The only issue in that case was whether the defendants' summary-judgment evidence conclusively established that Wadewitz was acting in good faith at the

---

[22] *Id.* (quoting *Swint v. City of Wadley*, 5 F.3d 1435, 1441-1442 (11th Cir. 1993) (internal quotation marks omitted)).

[23] *Id.* at 657.

[24] 951 S.W.2d 464 (Tex. 1997).

time of the collision.[25]

> We explained that
>
> [u]nder *Chambers*, good faith depends on how a reasonably prudent officer could have assessed both the *need* to which an officer responds and the *risks* of the officer's course of action, based on the officer's perception of the facts at the time of the event. The "need" aspect of the test refers to the urgency of the circumstances requiring police intervention. In the context of an emergency response, need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. The "risk" aspect of good faith, on the other hand, refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer.[26]

We went on to explain that because Wadewitz's summary-judgment evidence did "not address the degree, likelihood, and obviousness of the risks created by [his] actions", "neither Wadewitz nor his expert witness had a suitable basis for concluding that a reasonable officer in Wadewitz's position could . . . have believed that Wadewitz's actions were justified."[27] Accordingly, we held that Wadewitz had not

---

[25] *Id.* at 466.

[26] *Id.* at 467 (citing *Chambers*, 883 S.W.2d at 656).

[27] *Id.*

conclusively demonstrated his good faith under the *Chambers* test.[28]

In subsequent cases, we clarified that the *Chambers–Wadewitz* need–risk assessment does not place an onerous burden on law enforcement. In *University of Houston v. Clark*, we characterized the assessment as "analogous to the abuse of discretion standard".[29] Fifteen years later, in *Texas Department of Public Safety v. Bonilla*, we repeated that characterization as well as *Chambers*' statement that official immunity protects "all but the plainly incompetent or those who knowingly violate the law."[30] In *Bonilla*, we recognized that "[m]agic words are not required to establish that a law-enforcement officer considered the need/risk balancing factors."[31] And in *Clark*, we noted that "depending on the circumstances, an officer may not be able to thoroughly analyze each need or risk factor, and that this alone should not prevent the officer from establishing good faith."[32]

We have also declined to expand the need–risk balancing requirement beyond the pursuit and emergency-response contexts. In *Telthorster v. Tennell*, we held that a particularized need–risk assessment is *not* required to establish good faith when a suspect sues

---

[28] *Id.*; *see also Univ. of Hous. v. Clark*, 38 S.W.3d 578, 582 (Tex. 2000) ("We agree with Clark that the *Wadewitz* need and risk factors apply to good faith determinations in police pursuits as well as emergency responses. The *Chambers* balancing test inherently includes all the *Wadewitz* factors.").

[29] 38 S.W.3d at 581.

[30] 481 S.W.3d 640, 643 (Tex. 2015) (internal quotation marks omitted) (quoting *Chambers*, 883 S.W.2d at 656 & 657 n.7).

[31] *Id.* at 645.

[32] 38 S.W.3d at 583.

for injuries sustained during an arrest.[33] *Telthorster* involved a high-speed pursuit that ended when suspect Tennell pulled his car into his driveway and honked the horn to alert those inside the house. Officers Bailey and Telthorster approached Tennell's truck with their guns drawn and ordered Tennell to get out. While the officers were cuffing Tennell, Officer Telthorster's gun accidentally discharged, and the bullet grazed Tennell's back.

In the lawsuit that ensued, the only issue on appeal was whether Telthorster had conclusively established that he had acted in good faith during the attempted arrest.[34] "The court of appeals applied the particularized need/risk standard that we announced in *Chambers* and elaborated on in *Wadewitz*" and then concluded that Telthorster's summary-judgment proof fell short of that standard.[35] We granted review to determine what good-faith standard should apply under the circumstances.[36]

We examined the public policy underlying the doctrine of official immunity and the additional policy concerns presented in pursuit and emergency-response cases[37] before concluding that "when a suspect is injured during an arrest, the same public-policy concerns that caused us to formulate the particularized need/risk analysis are not implicated."[38]

---

[33] 92 S.W.3d 457, 459 (Tex. 2002).

[34] *Id.* at 460.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 463-464.

[38] *Id.* at 464.

"The inherent risk to the general public that high-speed driving causes is not an issue."[39] Furthermore, under the circumstances presented, there was no "evidence that the circumstances surrounding Tennell's arrest created a risk to bystanders or the public in general."[40] We therefore were not "presented with the same countervailing public safety concerns that we faced in" *Chambers* and *Wadewitz*, we explained.[41]

On the other hand, "official immunity's underlying purpose to encourage energetic law enforcement" was implicated by the circumstances presented.[42] That "purpose is most 'salient in the context of street-level police work, which frequently requires quick and decisive action in the face of volatile and changing circumstances.'"[43] "A high risk of liability" in this context could cause officers "to act hesitantly when immediate action is required," thereby endangering the public.[44]

"Based on [those] policy considerations," we held that a particularized need–risk assessment is not required when an arrest results in an injury to a suspect, and we disapproved of court of appeals' decisions requiring the assessment in that context.[45] We then

---

[39] *Id.*

[40] *Id.*

[41] *Id.* (internal quotation marks omitted) (quoting *Univ. of Hous. v. Clark*, 38 S.W.3d 578, 581 (Tex. 2000)).

[42] *Id.*

[43] *Id.* (quoting *Rowland v. Perry*, 41 F.3d 167, 172 (4th Cir. 1994)).

[44] *Id.*

[45] *Id.*

13

determined that "*Chambers*' good-faith test, absent its need/risk component, strikes the appropriate balance" between official immunity's purpose of encouraging energetic law enforcement and any risk to the public associated with street-level police work.[46]

Thus, "[t]o establish good faith, Officer Telthorster [was required to] show that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred."[47] We elaborated:

> Office Telthorster need not prove that it would have been unreasonable not to engage in the conduct, or that all reasonably prudent officers would have engaged in the same conduct. Rather, he must prove only that a reasonably prudent officer, under similar circumstances, *might* have reached the same decision. That Officer Telthorster was negligent will not defeat good faith; this test of good faith does not inquire into "what a reasonable person *would have done*," but into "what a reasonable officer *could have believed*."[48]

If the defendant officer meets this burden, the plaintiff "must do more than show that a reasonably prudent officer could have reached a different decision."[49] Rather, the plaintiff "must offer evidence that no

---

[46] *Id.* at 465; *see also id.* ("[T]he public interest in deterring abusive police conduct and in compensating victims remains protected by the objective test that we announce today.").

[47] *Id.* (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656-657 (Tex. 1994)).

[48] *Id.* (citations omitted) (quoting *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 n.1 (Tex. 1997)).

[49] *Id.*

reasonable officer in [the defendant's] position *could* have believed that the facts were such that they justified his conduct."[50] In other words, if "'officers of reasonable competence could disagree on this issue,' the officer acted in good faith as a matter of law."[51]

We concluded that Officer Telthorster's evidence conclusively established his good faith.[52] Telthorster testified by deposition that during the chase he had observed Tennell moving his free hand around the inside cabin of his truck and that during the seconds before his gun was discharged, he was unable to determine with certainty whether Tennell was concealing a weapon.[53] Telthorster's testimony was supported by an affidavit of another law-enforcement officer who averred that Telthorster acted reasonably under the circumstances, and Tennell's evidence failed to "show that *no* reasonable officer in Telthorster's position could have believed that the circumstances justified his conduct."[54] The court of appeals had "focus[ed] on the fact that Tennell turned out to be unarmed and thus presented no risk of harm", but "that conclusion [was] unduly informed by hindsight."[55] Rather, "[t]he proper focus is on whether a reasonable officer could have believed that the circumstances were such that Telthorster's conduct

---

[50] *Id.* (citing *Chambers*, 883 S.W.2d at 657) (emphasis added).

[51] *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[52] *Id.* at 465-466.

[53] *See id.* at 460, 465.

[54] *Id.* at 466-467.

[55] *Id.* at 466.

was justified based on the information he possessed at the time."[56]

**B**

The facts of this case are even further removed from the pursuit and emergency-response contexts than the arrest was in *Telthorster*. There was no suspect, no arrest, and no inherent danger to the public. Officer Tristan merely turned on his emergency lights to warn approaching motorists of a traffic slowdown ahead.

In response to the City's argument that the requirement of a need–risk assessment does not apply outside the context of a police emergency, the court of appeals said that it had "found no authority to support" the limitation urged by the City.[57] *Telthorster* is that authority.[58]

To demonstrate his good faith, Officer Tristan was only required to show that a reasonably prudent officer faced with the same circumstances could have believed that his conduct was justified. Officer Tristan's affidavit meets this test. It reflects that Officer Tristan had

---

[56] *Id.* (citing *Rowland v. Perry*, 41 F.3d 167, 172 (4th Cir. 1994); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656-657 (Tex. 1994)).

[57] 604 S.W.3d 432, 446 (Tex. App.—San Antonio 2020).

[58] The court of appeals said that "at least one of [its] sister courts ha[d] required evidence to perform a needs–risk balancing under facts like" those presented here, citing *Junemann v. Harris County*, 84 S.W.3d 689 (Tex. App.— Houston [1st Dist.] 2002, pet. denied). 604 S.W.3d at 446. In *Junemann*, a deputy constable stopped in the middle of a highway at night to investigate a stalled car, and a multi-car accident ensued. 84 S.W.3d at 692. The court of appeals there held that the constable had not established good faith as a matter of law because his testimony did not address the risks created by his actions. *Id.* at 694-695. We note that *Junemann* was decided only five days after *Telthorster*. The *Junemann* court may not have been aware of our decision.

been employed by the San Antonio Police Department for 29 years, that he "observed a sudden traffic slowdown" as he approached the Pecan Valley Drive exit, and that he took action consistent with his training and experience. The affidavit states:

> At the time I observed the traffic slowdown, it was within my discretion to decide upon the best course of action to take for the safety of other motorists on I.H. 37 South. In order to warn other motorists of the traffic slowdown ahead, I determined the best course of action was to slow down and turn on my emergency overhead lights.
>
> * * *
>
> At the time I activated my emergency overhead lights, . . . I was operating my SAPD vehicle in a safe manner with concern for the safety of other motorists which is consistent with my training and experience with SAPD in responding to traffic events such as the sudden traffic slowdown that took place on February 17, 2017.

We have said that magic words are not required for evidence to satisfy the *Chambers–Wadewitz* standard,[59] and we reiterate today that they are not required for an affidavit to satisfy the lower *Telthorster* standard either. We conclude that Officer Tristan's affidavit is sufficient to demonstrate that a reasonably prudent officer in his shoes could have believed that activating his emergency lights was warranted.

The burden then shifted to Riojas to present conflicting evidence—i.e., that *no* reasonable officer in Tristan's position could have believed that turning on his lights was justified.[60] Riojas did not present any evidence at all. Accordingly, Officer Tristan's affidavit conclusively

---

[59] *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 645 (Tex. 2015).

[60] *See Telthorster*, 92 S.W.3d at 465.

establishes that he acted in good faith. And because the other elements of official immunity are not disputed, the defense is proven as a matter of law.

*　　*　　*　　*　　*

We reverse the judgment of the court of appeals and dismiss Riojas' claims against the City for lack of jurisdiction.

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** February 18, 2022